Lori **HERNDON**, Appellant,

v.

The **CITY OF MANCHESTER**,
Respondent.

No. ED 91175.

Missouri Court of Appeals,
Eastern District,
Division One.

March 24, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 28, 2009.

Application for Transfer Denied
June 30, 2009.

Jerome J. Dobson, Jonathan C. Berns, Saint Louis, MO, for Appellant.

Gino F. Battisti, Lise Alexa Newton, Patrick R. Gunn, Saint Louis, MO, for Respondent.

## OPINION

GLENN A. NORTON, Judge.

Lori Herndon ("Employee") appeals the trial court's grant of summary judgment in favor of the City of Manchester ("Employer") on Employee's claims that Employer violated the Missouri Human Rights Act ("MHRA") based on incidents of sexual harassment and sexual discrimination perpetrated by her relief supervisor, Sergeant Willie Epps. She argues that summary judgment is improper because Employer failed to demonstrate that it took reasonable steps to prevent any sexually harassing behavior as a matter of law. We reverse and remand.

### I. BACKGROUND

Viewing the facts in the light most favorable to Employee, the record indicates the following: Employee was a police officer with Employer's police department from October 8, 2001, until February 3, 2005. The parties do not dispute that on several occasions between February and June 2004, Epps sexually harassed Employee while acting as her relief supervisor.[1] Subsequently, Employee filed an ac-

---

1. According to the record, Sergeant Epps filled in as Employee's supervisor when her immediate supervisor was unavailable.

Epps's acts of harassment included making sexually suggestive comments, grabbing Employee and pressing himself against her, and

tion under the MHRA against Employer and Epps based on Epps's conduct.

## A. Epps's Alleged Prior Misconduct

In 1985, before Epps was hired to work for Employer, he worked with the Northwoods police department and had a secondary job as a Schnucks Grocery Store security officer. During that time, a female employee at Schnucks filed a complaint against Epps for sexual misconduct with the St. Louis County police department. The employee alleged that Epps tried to pursue her sexually and that on at least one occasion he exposed himself to her when she came out of the store bathroom. Epps was suspended for several days with pay and investigated by the department as a result of the employee's complaint. He was later terminated from employment at the Northwoods police department for violating a secondary employment policy. Epps then applied for a position with Employer.

In deciding whether to hire Epps, Employer sent a request for employment verification form to Northwoods. The form asked for information about Epps, including his disciplinary record. The Northwoods police department's chief, Chief Sylvester Jones, returned the form, listing only Epps's identifying information and dates of employment. Employer's police chief, Chief John Quinn, stated that he has also only included dates of employment on verification forms when the employee subject to the request had disciplinary problems. According to Chief Quinn, he would have expected one of his sergeants to contact Chief Jones about any missing information. Chief Quinn explained that he did not know about the prior allegations of sexual misconduct until after Employee

filed her complaint. Had he known about the allegations, Chief Quinn stated that he would not have considered Epps as an applicant.

In 1998, after Epps began working for Employer, Epps responded to a nuisance call at a hot tub party. Epps spoke to one of the female guests at the party. Later, he began to stop and talk to her when she was out in her yard. The visits became frequent enough that the woman's neighbors began to talk about the situation. Epps mentioned to the woman that she looked good in her black bathing suit on several occasions. At one point, Epps knocked on the woman's door and stepped into her doorway. He offered to buy her a souvenir newspaper about Mark McGwire and she told him her husband was on his way home and would probably pick one up. Epps asked if he could "get a hug" for offering. On another occasion, the woman noticed Epps staring at her from his patrol car when she was sitting by the children's local swimming pool. Finally, Epps pulled the woman over while she was driving and asked her whether she dated outside her marriage.

The woman told her husband about the incidents with Epps and he called Chief Quinn to complain. According to Chief Quinn, the husband told him about how Epps pulled his wife over and asked her about her marriage and whether she would date outside her marriage. The husband also told the chief that Epps had frequently been patrolling the area around their neighborhood. Chief Quinn asked the husband if he or his wife wanted to make a formal complaint in writing. When the husband told Chief Quinn that he just wanted Epps to stop bothering his wife,

forcing Employee to kiss him. Employee voluntarily dismissed her claims against Epps before filing her notice of appeal.

Chief Quinn discussed the citizen's complaints with Epps. Epps denied any misconduct. Chief Quinn counseled Epps to avoid any contact with the couple. He had no further discussions with Epps about the incidents with the woman. When Chief Quinn learned more about the incidents after Employee filed her complaint and the department conducted an internal investigation of Epps, Chief Quinn testified that had he previously known the specifics of the woman's allegations, it would have concerned him.

## B. Employer's Sexual Harassment Policies and Procedures

Employer has a policy and procedure in place for dealing with charges of sexual harassment. In particular, Employer's personnel manual contains a sexual harassment policy and grievance procedure. The personnel manual refers to "Appendix C" as containing its official sexual harassment policy. Specifically, under the heading "POLICY," the manual states:

> It is the policy of [Employer] to provide a businesslike work environment free from all forms of employee discrimination, including incidents of sexual harassment. No employee shall be subjected to unsolicited and unwelcome sexual overtures or conduct, either verbal or physical. Sexual harassment will be treated as misconduct, subject to appropriate disciplinary sanctions.

Employer's sexual harassment policy calls on supervisory personnel to be responsible for enforcing the stated policy. It also contains a reporting procedure.

Employer's police department supplements the personnel manual policy with two special orders. One of the special orders, Special Order No. 8–02, specifically addresses sexual harassment. It includes language similar to that contained in the personnel manual explaining that the over-all policy of the police department is to provide a work environment free from sexual harassment. It also outlines a reporting procedure.

The second special order, Special Order No. 8.01A, is entitled "Complaint Review and Internal Affairs Policy." Although this policy does not expressly refer to sexual harassment, it is intended to provide procedures for addressing complaints of employee misconduct within the police department. One of the sections of the special order describes the department's procedure for dealing with citizen complaints. It states that complaints may be given in person, over the telephone or in writing. Anonymous complaints or complaints issued from those who wish that their names remain confidential may also be accepted for investigation. The procedure requires the supervisor in charge of investigating the complaint to document the complaint in writing and promptly forward it to the chief. The person complaining must be advised of procedures for processing and investigating complaints. The policy permits the supervisor to attempt to resolve the complaint and requires that investigations of all complaints be completed within a reasonable time with regular status reports filed. A person who files a complaint in writing is entitled to notice that the matter is under investigation and written notice of the final disposition of the matter.

In addition to the section devoted to citizen complaints, Special Order No. 8.01A also describes the procedure a supervisor must follow to investigate reported officer misconduct. In particular, Special Order No. 8.01A states that, "upon becoming aware of or receiving notification of potential rules violations by an officer under his command, a supervisor shall begin an immediate investigation of such allegations." The investigation must include questioning

the officer, witnesses and complainants, and securing all relevant evidence. The supervisor must then forward a report of the alleged violations, all documents and evidence relating to the investigation, and recommendations for further investigation or other disposition of the matter through appropriate channels.

## C. Employer's Actions Upon Receiving Employee's Complaint

Although the parties dispute the extent to which Employer took corrective measures after learning of Employee's harassment, within days after Employee informed her supervisor of Epps's conduct, Epps's schedule was changed so that he would have no further contact with Employee. After Employee filed a formal complaint, Employer asked the Missouri State Highway Patrol to conduct an investigation of Epps. Employer's police department also conducted an internal investigation. Upon completion of the investigation, Epps was terminated from employment because of his behavior.

## D. Employer's Motion for Summary Judgment

Relying on *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238 (Mo.App. E.D. 2006), which cites the holdings of *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), Employer filed a motion for summary judgment on Employee's MHRA claims. Employer argued that it met the United States Supreme Court's requirements in *Ellerth* and *Faragher* for asserting an affirmative defense to vicarious liability otherwise imposed when an employee's supervisor sexually harasses the employee. *See Ellerth*, 524 U.S. at 764–65, 118 S.Ct. 2257 and *Far-*

*agher*, 524 U.S. at 807, 118 S.Ct. 2275 (requiring an employer to prove as an affirmative defense that (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm). According to Employer, it demonstrated that it met the *Ellerth* and *Faragher* criteria as a matter of law. The trial court agreed. Employee appeals.

## II. DISCUSSION

### A. Standard of Review

■ Because the propriety of summary judgment is purely an issue of law, our review on appeal is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. *Id.* Facts set forth by affidavit or otherwise in support of the summary judgment motion are taken as true unless contradicted by the non-moving party's response. *Id.* Further, we accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Summary judgment is appropriate when the moving party "has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Id.*

■ This Court has observed that "summary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Lomax v. DaimlerChrysler Corp.*, 243 S.W.3d 474, 479 (Mo.App. E.D.2007) (citing *Daugherty v. City of Maryland Heights*, 231 S.W.3d

814, 818 (Mo. banc 2007)). In addition, summary judgment should not be granted unless the evidence could not support any reasonable inference in favor of the non-movant. *Lomax*, 243 S.W.3d at 479. Finally, we note that in analyzing employment discrimination cases under the MHRA, we are guided not only by Missouri law, but also by federal employment discrimination cases. *Cooper*, 204 S.W.3d at 242.

## B. Genuine Issues of Material Fact Exist as to Whether Employer Exercised Reasonable Care to Prevent Any Sexually Harassing Behavior

■ Employee raises several arguments on appeal as to why Employer is not entitled to judgment as a matter of law. Because we find that Employee's second point is dispositive, we need not address Employee's additional arguments. In her second point, Employee argues that the trial court erred in finding that Employer was entitled to summary judgment because Employer failed to establish, as a matter of law, that it took reasonable steps to prevent sexual harassment. We agree.

■ In *Ellerth* and *Faragher*, the Supreme Court determined that an employer may be found vicariously liable for a supervisor's harassment. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275. However, an employer may avoid such liability based on the *Ellerth–Faragher* affirmative defense if it is able to prove the following: (1) that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *Id.* As the "defending party" in its motion for summary judgment, Employer was required to establish that there

is no genuine dispute as to the existence of all facts necessary to support both elements of the *Ellerth–Faragher* affirmative defense. *ITT Commercial Finance Corp.*, 854 S.W.2d at 381.

Citing *Weger v. City of Ladue*, 500 F.3d 710 (8th Cir.2007), Employer argues that it established as a matter of law that it satisfied the "prevention prong" of *Ellerth–Faragher* because it had a facially valid anti-harassment policy which, when put into effect by Employee's complaint, immediately stopped the harassment. *See Weger*, 500 F.3d at 720 (finding that the employer acted reasonable to prevent harassment as a matter of law because it had a facially valid anti-harassment policy that, when invoked by the plaintiff, brought an immediate end to the plaintiff's harassment). Employer quotes the following language from *Weger* as support for its argument that it established reasonable prevention as a matter of law: "distribution of a valid anti-harassment policy provides compelling proof that [an employer] exercised reasonable care in preventing and promptly correcting sexual harassment." *Id.* at 719.

Employee disagrees. First, she argues that this Court should not follow *Weger* to the extent it permits an employer to establish the prevention prong as a matter of law by merely demonstrating the existence of a facially valid anti-harassment policy. Relying on *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 349 (6th Cir.2005), Employee instead asserts that a court "must look not only to [the employer's] sexual harassment policy ... but also to its implementation of that policy."

Referring to Epps's prior behavior, Employee then contends that Employer did not exercise reasonable care to prevent harassment because of its neglectful actions in failing to inquire about Epps's disciplinary record before hiring him and

its inadequate response to the citizen harassment complaint. Employee cites several cases which discuss the relevance of prior complaints of sexual misconduct when determining whether an employer has established the "prevention prong" of the *Ellerth–Faragher* defense. *See, e.g., Dees v. Johnson Controls World Services, Inc.*, 168 F.3d 417, 422–23 (11th Cir.1999) (finding that a genuine issue of material fact existed as to whether the employer exercised reasonable care to prevent harassment where the plaintiff alleged that the employer was aware of other harassing conduct by the same supervisors before plaintiff filed her complaint but did not take any corrective action); *Schmidt v. Medicalodges, Inc.*, 492 F.Supp.2d 1302, 1310–11 (D. Kansas 2007) (finding that the plaintiff provided sufficient evidence from which a reasonable jury could conclude that other employees complained to supervisors about the same supervisor's sexual harassment prior to the plaintiff's complaint but the employer did not take any corrective action, thereby precluding a finding that the employer exercised reasonable care to prevent and correct sexually harassing behavior as a matter of law); *cf. Mason v. Wal–Mart Stores, Inc.*, 91 S.W.3d 738, 743 (Mo.App. W.D.2002) (stating that evidence that a co-worker complained to management about harassment by another co-worker may have probative

value as to whether management had constructive notice of the harassment of the plaintiff).

■ We agree with Employee that the mere existence of a sexual harassment policy is insufficient to satisfy an employer's burden of demonstrating that it exercised reasonable care in preventing sexual harassment.[2] Thus, we find that it is necessary to consider Employer's reaction to Epps's prior acts of misconduct in determining whether Employer acted with reasonable care to prevent sexual harassment toward Employee.

Employer argues that Epps's prior acts of misconduct are irrelevant because they are remote in time and because they were not directed toward co-workers. It describes the non-employee status of Epps's victims as "the key distinguishing factor" from every case Employee cites in support of its argument. Employer then asserts that it should not be imputed with knowledge of harassment from "complete strangers to the workplace."

While we agree with Employer that typically an employer should not be imputed with knowledge of harassment outside the workplace, we disagree that the alleged prior acts of harassment in this case were perpetrated on "complete strangers." Because Epps was disciplined by the Northwoods police department based on the Schnucks employee's allegations of sexual

---

**2.** We further note that it is unclear the 8th Circuit disagrees with Employee's contention that a court should look beyond the face of a sexual harassment policy to determine whether the policy was effective in practice. In *Adams v. O'Reilly Automotive, Inc.*, decided after *Weger*, the 8th Circuit repeated the language in *Weger* that distribution of a valid anti-harassment policy is compelling proof that the employer exercised reasonable care. 538 F.3d 926, 929 (8th Cir.2008) (citing *Weger*, 500 F.3d at 719). It then stated, however, that "[i]f the policy was unreasonable or unenforced then it cannot be used to demonstrate that [the employer] exercised reason-

able care in preventing and correcting sexual harassment." *Adams*, 538 F.3d at 929. Indeed, even in *Weger* the court specifically stated that, while distribution of a valid anti-harassment policy is compelling proof, "it is not dispositive." 500 F.3d at 719. Employer acknowledges the necessity of looking beyond the face of the policy in its brief, citing *Adams* and quoting the following language from *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir.2001): "[t]he only way to rebut this proof is to show that the employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional."

misconduct, Epps's then-employer had direct knowledge of the misconduct that it could have passed on to Employer if Employer took additional steps to acquire the information. Thus, a jury could find that Employer did not act reasonably when it failed to follow-up after receiving Epps's employment verification form listing only Epps's identifying information and dates of employment. The record contains evidence that Chief Quinn admitted to only including dates of employment when he filled out such forms when the employee had a disciplinary record. Chief Quinn also specifically stated that he would not have hired Epps if he knew at the time about the Schnucks employee's allegations. While a jury may also agree with Employer that the allegations against Epps were too remote in time or that Employer did not need to follow-up before hiring Epps, the issue of whether Employer acted reasonably with regard to the Schnucks employee incident is a question of fact for the jury.

A jury could also find that Employer did not act reasonably to prevent harassment in light of the citizen couple's complaint of frequently patrolling the couple's neighborhood, making inappropriate comments to the wife, watching her from his patrol car, and pulling her over to ask whether she would date outside her marriage. While she was not a co-worker, Epps either harassed her while on the job or, even if his conduct was not authorized, he used his position as a police officer to gain access to her for the purpose of harassment. As Employee points out in her brief, the police department has a specific policy and procedure for dealing with citizen complaints and for investigating officer misconduct. In particular, the policy and procedure requires a supervisor who learns of a rule violation by an officer in his command to conduct an investigation. Such an investigation includes questioning witnesses, securing relevant evidence, and preparing and forwarding a report regarding the complaint or the supervisor's recommendations. Chief Quinn testified that after speaking with the citizen's husband, he confronted Epps and told him not to bother her again but did not take any further action. Again, it is a question of fact for the jury whether Employer's response to the citizen's allegations demonstrated reasonable care in preventing harassment.

In sum, because Employee has demonstrated a genuine issue of material fact as to whether Employer exercised reasonable care in preventing harassment, Employer is not entitled to judgment as a matter of law on Employee's MHRA claims. Employee's second point is granted.

## III. CONCLUSION

The trial court's grant of summary judgment is reversed and the cause is remanded.

KURT S. ODENWALD, P.J. and PATRICIA L. COHEN, J., concur.