**Chukayla V. REED, Appellant,**

v.

**McDONALDS CORPORATION, Defendant,**

and

**Rich House, Inc., et al., Respondents.**

**No. ED 95895.**

Missouri Court of Appeals,
Eastern District,
Southern Division.

Jan. 24, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 1, 2012.

Application for Transfer Denied
May 1, 2012.

John P. Clubb, Laura Clubb, Cape Girardeau, MO, Rebecca Steward, Sikeston, MO, for Appellant.

Charles E. Reis, IV, Amy L. Nixon, Jennifer A. Goltermann, Saint Louis, MO, for Respondents.

## OPINION

GLENN A. NORTON, J.

Chukayla V. Reed appeals the grant of summary judgment in favor of defendants Rich House, Inc. ("Franchisee"), a franchisee of McDonald's Corporation, and Shannon Y. Davis, Franchisee's president, on

Reed's claims of sexual discrimination in the form of sexual harassment and constructive discharge under the Missouri Human Rights Act ("MHRA"). Reed also appeals the trial court's award of $25,000 in the default judgment entered against defendant Kevin Emanuel, an assistant manager of Franchisee, on Reed's claims under the MHRA. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Viewing the record in the light most favorable to Reed, the party against whom summary judgment was entered, establishes the following: in November 2004, at the age of fifteen, Reed became employed by Franchisee.

Emanuel began working for Franchisee in February 2005 as an assistant manager at the same Franchisee location where Reed was employed. Shortly after his employment began, Emanuel began making sexual remarks to Reed including comments such as, "you look sexy today," "you look nice in your uniform," and "you are the hottest thing in here today." These comments made Reed feel uncomfortable, but she did not report them to anyone. In June 2005, Emanuel began calling and texting Reed, including a text message directed to Reed stating, "boy, you know what I would like to do to you." Additionally, during work, Emanuel rubbed Reed's shoulders and grabbed Reed around the waist.

Sometime in early July 2005, Emanuel sent Reed a text message indicating, "I know that you are off work, and if you don't come out here and get in my car, I'm going to hurt you really, really badly." Reed got in Emanuel's car, and Emanuel drove the car to a nearby parking lot where they engaged in sexual intercourse without Reed's consent. Because Reed was scared of Emanuel and believed he was capable of hurting her, she did not immediately report the incident.

On three additional occasions, Reed, feeling pressured and fearing for her safety, left with Emanuel in his car and the parties engaged in sexual intercourse without Reed's consent. Reed did not immediately report any of those incidents. In her deposition and affidavit, Reed states that she submitted to Emanuel's demands because he made her feel scared and intimidated. Reed also indicates that Emanuel threatened her, including threatening that he could get her fired. After the final sexual encounter, Emanuel continued to contact Reed through phone calls and text messaging. Reed responded to Emanuel's text messages by telling him that she wanted nothing to do with him, imploring him to leave her alone.

On September 12, 2005, Reed reported what had happened to her school resource officer, Sergeant Adam Glueck of the Cape Girardeau Police Department. Reed then reported the incidents to Franchisee's upper level manager, Cheryl Farrow. The same day that Reed reported the incidents, Franchisee suspended Emanuel in order to conduct an investigation. Farrow offered Reed the opportunity to transfer to a different Franchisee location, but Reed decided to stay in the same location. Farrow also told Reed to contact her if she had any other problems or situations at work.

After Emanuel was suspended, Emanuel visited Franchisee's restaurant on several occasions while Reed was working and talked with other co-workers and an assistant manager. Within days after Reed reported the incidents to Franchisee, numerous co-workers began asking her questions. Rumors began spreading around work after Emanuel's employment was terminated sometime in early October 2005. Many of Reed's co-workers held

Reed responsible for Emanuel's termination and believed Reed's actions were wrong. Although the rumors and statements from co-workers made Reed feel uncomfortable, Reed never reported any problems with Franchisee until she quit. Reed quit working for Franchisee in January 2006, citing the sexual harassment by Emanuel and the stress of everybody knowing the situation that occurred as being the reasons for her departure.

On November 10, 2005, Reed filed a charge of discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination in violation of the MHRA. She filed amended charges on November 28, 2005, and May 23, 2007. The charges did not mention any circumstances regarding her employment at Franchisee after she reported the incidents. Subsequently, the MCHR issued a Notice of Right to Sue letter to Reed. Reed filed a petition on August 28, 2007, and an amended petition on February 19, 2008, alleging sexual discrimination in the form of sexual harassment (Count I) and constructive discharge (Count II) against McDonald's Corporation,[1] Franchisee, Davis, and Emanuel.

Franchisee and Davis filed respective motions for summary judgment which were granted by the trial court, without specifying the reasons for its decision. Emanuel did not file an answer to Reed's petition and did not participate in the litigation. In July 2010, Reed filed a motion for default judgment against Emanuel, which the trial court granted. After a hearing, the trial court found that Reed is entitled to $25,000 in damages against Emanuel.

Reed appeals the grant of summary judgment in favor of Franchisee and Davis. Reed also appeals the trial court's award of $25,000 in the default judgment entered against Emanuel.

## II. DISCUSSION

### A. Summary Judgment in Favor of Davis and Franchisee

Reed's first three points on appeal allege error in the trial court's grant of summary judgment in favor of Davis and Franchisee.

### 1. Standard of Review

The propriety of a grant of summary judgment is purely an issue of law that we review de novo. *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009). We review the record in the light most favorable to the party against whom judgment was entered. *Id.* Additionally, we take as true any facts set forth in favor of the motion for summary judgment unless they are contradicted by the non-movant. *Herndon v. City of Manchester*, 284 S.W.3d 682, 686 (Mo.App. E.D.2009). "Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *Hill*, 277 S.W.3d at 664. A genuine issue will prevent summary judgment when the record shows two plausible but contradictory accounts of the essential facts. *Wallingsford v. City of Maplewood*, 287 S.W.3d 682, 685 (Mo. banc 2009).

■■ If, as in this case, the trial court does not state its reasoning for granting summary judgment, we presume the court based its decision on the grounds asserted in the movant's motion. *Central Missouri Elec. Co-op. v. Balke*, 119 S.W.3d 627, 635

1. McDonald's Corporation was dismissed by stipulation of the parties on October 3, 2008.

(Mo.App. W.D.2003). Because employment discrimination cases are inherently fact-based and often depend on inferences rather than on direct evidence, summary judgment seldom should be used in such cases. *Hill*, 277 S.W.3d at 664.

### 2. Summary Judgment in Favor of Davis on Reed's Sexual Harassment and Constructive Discharge Claims

■ In her first point on appeal, Reed claims the trial court erred in granting summary judgment in favor of Davis on her sexual harassment and constructive discharge claims. In Davis' motion for summary judgment, he argues that he is entitled to judgment as a matter of law as to both counts because he cannot be individually liable under the MHRA.

On appeal, Reed argues that Davis meets the definition of an employer under the MHRA and therefore can be individually liable in the event of discriminatory conduct. While Davis admits that the MHRA allows for individual liability, he asserts that liability is limited to those individuals who engage in the violating acts. Because Reed does not allege that Davis actually engaged in discriminatory practices, Davis claims he is entitled to judgment as a matter of law because he cannot be held individually liable. He argues that holding him liable would, in effect, hold him vicariously liable for the acts of Franchisee's employees. We agree.

The MHRA makes it an unlawful employment practice for "an employer, because of the race, color, religion, national origin, sex, ancestry or disability of any individual ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment...." Section 213.055.1(1)(a) RSMo 2000.[2] The MHRA broadly defines employer to include "any person directly acting in the interest of an employer ..." Section 213.010(7). Missouri Courts have found that the plain and unambiguous language under this definition of employer imposes individual liability in the event of discriminatory conduct. *Hill*, 277 S.W.3d at 669. However, Missouri cases have only allowed for individual liability under the MHRA when the individuals directly oversaw or were actively involved in the discriminatory conduct. *See id.* (supervisory employee was allegedly involved in the retaliatory conduct); *Leeper v. Scorpio Supply IV, LLC*, 351 S.W.3d 784, 792 (Mo. App. S.D.2011) (sole managing member was actively involved in each store's operation, he hired and directly supervised the alleged harasser, and he was the person in charge of implementing sexual harassment policies); *Brady v. Curators of University of Missouri*, 213 S.W.3d 101, 113 (Mo.App. E.D.2006) (individual supervisors allegedly participated in the age discrimination and retaliation); *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 241, 244 (Mo.App. E.D.2006) (individual CEO allegedly sexually harassed plaintiffs).

Unlike the defendant in *Leeper* who actively participated in the daily operation of the business and directly oversaw the conduct of the alleged harasser, nothing in the record supports a finding that Davis was in a position directly overseeing the alleged discriminatory conduct of which Reed complains. Furthermore, unlike the individual defendants in *Hill*, *Brady*, and *Cooper*, whose individual conduct constituted the allegations of MHRA violations, Reed's claims of discrimination under the MHRA are not based on any discriminatory conduct by Davis. In Count I, Reed claims Davis' sexual discrimination in the form of sexual harassment violated the MHRA. Reed's allegations as to this claim

---

**2.** All further statutory references are to RSMo 2000.

stem entirely from the conduct and alleged harassment perpetrated by Emanuel. In Count II, Reed claims she was constructively discharged in violation of the MHRA. "Constructive discharge occurs when an employer deliberately renders an employee's working conditions so intolerable that the employee is forced to quit his or her job." *Wallingsford*, 287 S.W.3d at 686. Furthermore, constructive discharge requires a finding of a continuous pattern of discriminatory treatment. *Id.* Here, Reed does not allege a continuous pattern of discrimination committed by Davis. Instead, Reed claims she was constructively discharged as a result of the working conditions created by Emanuel's alleged sexual harassment and the stress of everyone knowing and talking about the incidents.

Because Reed does not allege that Davis directly oversaw or was actively involved in the alleged discriminatory treatment giving rise to her claims under the MHRA, Davis cannot be individually liable. Accordingly, the trial court did not err in granting Davis summary judgment as to all counts. Point one is denied.

### 3. Summary Judgment in Favor of Franchisee on Reed's Sexual Harassment Claim

In her second point on appeal, Reed claims the trial court erred in granting Franchisee summary judgment as to her sexual harassment claim. In its motion for summary judgment, Franchisee argues it is entitled to judgment as a matter of law with respect to Reed's sexual harassment claim because: (1) Reed's claim is barred by the statute of limitations; (2) Reed's claim fails on the merits because Reed fails to establish that Emanuel's conduct was unwelcome; and (3) Reed's claim fails on the merits because Franchisee promptly

and reasonably responded to Reed's complaint. Reed contends her petition was timely filed and there are genuine issues of material fact as to the merits of her sexual harassment claim.

#### a. Whether Reed's Claim is Barred by the Statute of Limitations

Section 213.111.1 states that an action brought under the MHRA shall be filed "no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." In this case, Reed filed her petition on August 28, 2007. Accordingly, in order to satisfy the statute of limitations, the events giving rise to Reed's injury must have occurred after August 28, 2005.

Franchisee contends that the last allegation of sexual harassment occurred during the last sexual encounter between Emanuel and Reed, sometime before August 15, 2005. Franchisee relies on Reed's deposition, taken in July 2009, where she indicates that the last sexual encounter with Emanuel was sometime before August 15, 2005. However, in Reed's statement of facts and affidavit accompanying her response to Franchisee's motion for summary judgment, Reed states that she is unsure of the exact date of the acts and, to the extent that her deposition testimony differs from statements taken closer in time to the incidents, she defers to those prior statements. In her charges of discrimination filed with the MCHR in November 2005 and in May 2007, Reed states that the last sexual encounter occurred "at the end of August." Based on this assertion, a reasonable jury could find that one act of alleged sexual harassment occurred after August 28, 2005, and within the two-year filing period under section 213.111.1.[3]

---

3. We are mindful of the argument raised by Franchisee during oral argument that Reed, as the non-movant, cannot rely on inconsis-

tent testimony to create a genuine issue of material fact. *See ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,*

Therefore, there is a genuine issue of material fact as to whether Reed's claim is time-barred.

### b. Whether Reed was Subjected to Unwelcome Conduct

 Franchisee further contends that even if Reed's sexual harassment claim was timely filed, it fails on the merits. In order to prevail on her sexual harassment claim, Reed must establish: (1) that she is a member of a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that her gender was a contributing factor in the harassment; and (4) that a term, condition or privilege of her employment was affected by the harassment. *Cooper*, 204 S.W.3d at 244. Here, Franchisee asserts that Reed's claim fails on the merits because she cannot establish the second element, i.e. that Emanuel's conduct was unwelcome. This assertion is based on phone records that, Franchisee alleges, show Reed actively pursued contact with Emanuel throughout the period Reed claims Emanuel pressured her into sexual relations.

Viewing the record in the light most favorable to Reed, a reasonable jury could find that the sexual advances from Emanuel were unwelcome. In her deposition and affidavit, Reed states that she submitted to Emanuel's demands because he made her feel scared and intimidated. Reed also indicates that Emanuel threatened her, including threatening that he could get her

fired. Furthermore, in her affidavit accompanying her response to Franchisee's motion for summary judgment, Reed states that she did not consent to the sexual contact with Emanuel. Accordingly, there is a genuine issue of material fact as to whether Emanuel's conduct was unwelcome.

### c. Whether Franchisee Promptly and Reasonably Responded to Reed's Complaint

Franchisee also claims that it is entitled to summary judgment because Reed cannot show that Franchisee knew or should have known of the harassment but failed to take prompt and effective remedial action. Franchisee's argument is based on the premise that Emanuel was only a co-worker to Reed, rather than her supervisor. *See Leeper*, 351 S.W.3d at 793; *see also Hill*, 277 S.W.3d at 666 n. 6 (stating that under Missouri law, if the alleged harassers are co-workers, an employer will only be liable if the plaintiff can show that the employer "knew or should have known of the harassment and failed to take prompt and effective remedial action"). Reed argues that she does not have to meet this burden because Emanuel was her supervisor and therefore Franchisee may be vicariously liable for Emanuel's sexual harassment. *See Herndon*, 284 S.W.3d at 687 (finding that an employer may be vicariously liable for a supervisor's harass-

---

854 S.W.2d 371, 388 (Mo. banc 1993) ("[A] party may not avoid summary judgment by giving inconsistent testimony and then offering the inconsistencies into the record in order to demonstrate a genuine issue of material fact"). Here, however, the statement contradicting Reed's deposition testimony was made in the charges of discrimination filed with the MCHR, which accompanied Franchisee's motion for summary judgment. This defeated Franchisee's ability to make a prima facie showing entitling it to summary

judgment. *See id.* at 382 ("[M]aterials submitted by the movant that are, themselves, inconsistent on the material facts defeat the movant's prima facie showing"). Accordingly, there was no need for Reed to offer inconsistencies into the record in order to defeat Franchisee's motion for summary judgment. *See id.* (stating that the non-movant must supplement the record to create a genuine dispute only if the movant has shown a right to judgment based on uncontradicted materials).

ment); *see also* 8 C.S.R. 60–3.040(17)(D)(1) (2003).[4]

Franchisee urges this Court to apply the standard in *Weyers v. Lear Operations Corp.*, 359 F.3d 1049 (8th Cir.2004) and find that Emanuel was not a supervisor because he had no ability to hire or fire other employees. In *Weyers*, the Eighth Circuit found that the test for supervisory authority is whether the purported supervisor had "the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties." *Id.* at 1057. When reviewing cases under the MHRA, Missouri Courts are guided by federal employment discrimination law consistent with Missouri law. *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 866 (Mo.App. E.D.2009). However, the MHRA's safeguards are not identical to federal standards and can offer greater protection. *Id.*

As noted by the Missouri Supreme Court, the MHRA "expands the definition of 'supervisor' to include employees other than the plaintiff's immediate supervisor, even if that employee is outside of the plaintiff's direct chain of command." *Hill*, 277 S.W.3d at 667 n. 7 (internal quotation omitted). Indeed, the MHRA extends vicarious liability of an employer to a "supervisor who the employee reasonably believes has the ability to significantly influence employment decisions affecting him or her even if the harasser is outside the employee's chain of command." 8 C.S.R. 60–3.040(17)(D). The regulation gives further guidance by stating that the "circumstances of the particular employment relationship and the job functions performed by the individual" will determine whether an individual acts as a supervisor. 8 C.S.R. 60–3.040(17)(D)(5).

■ Here, Emanuel was employed by Franchisee as an assistant manager while Reed was employed as a crew member. In her deposition and affidavit in response to Franchisee's motion for summary judgment, Reed states that she believes Emanuel changed the hours of her shift so that she would work with Emanuel more often. Furthermore, her affidavit states that Emanuel was her supervisor whom she had to answer to and follow directives. Her affidavit also indicates that she believed Emanuel had the ability to make decisions relating to her employment with Franchisee. Accordingly, a jury could find that Reed reasonably believed Emanuel had the ability to significantly influence employment decisions affecting her employment. Such a finding would make Emanuel Reed's supervisor under the MHRA and submit Franchisee to vicarious liability unless Franchisee could prove the affirmative defense set forth in 8 C.S.R. 60–3.040(17)(D)(1).

■ Under that affirmative defense, an employer may avoid vicarious liability for sexual harassment by a supervisor if it can show the following necessary elements: "a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and b) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." 8 C.S.R. 60–3.040(17)(D)(1).

Franchisee claims that it can meet this affirmative defense and is therefore entitled to summary judgment. Franchisee argues that it took reasonable care in preventing and correcting any harassment. First, Franchisee contends that it provided

4. All further regulatory references are to the 2003 edition of the Code of State Regulations.

Reed a copy of their Franchise Policies which states, in relevant part, that any employees "who felt subjected to discrimination or harassment should immediately report it to management. It will then be thoroughly investigated." Franchisee also argues that it posted anti-harassment posters and laws. Based on these policies, Franchisee contends that Reed could have reported the alleged harassment at any time. Furthermore, Franchisee argues that it took prompt action to remedy the alleged harassment by immediately suspending Emanuel after Reed reported the incidents.

Despite Franchisee's arguments, viewing the record in the light most favorable to Reed reveals that a reasonable jury could find that Franchisee failed to take reasonable care in preventing and correcting the alleged sexual harassment. Reed testified in her deposition, and reiterates in her affidavit, that she does not recall that Franchisee's sexual harassment policies were explained to her. Furthermore, Reed contends that after she reported the sexual harassment to Franchisee, Franchisee allowed Emanuel to return to the restaurant on days Reed was working, where Emanuel visited with other employees and managers. Reed also contends that Franchisee failed to protect her privacy from other employees regarding the sexual encounters with Emanuel, creating an uncomfortable environment for Reed where co-employees discussed the sexual harassment perpetrated by Emanuel. Accordingly, there is a genuine issue of material fact as to whether Franchisee can prove its affirmative defense.

### d. Conclusion

Because there are genuine issues of material fact as to the date the events giving rise to Reed's injury occurred and as to the merits of Reed's sexual harassment claim, the trial court erred in granting summary judgment in favor of Franchisee on Reed's sexual harassment claim. Point two is granted.

### 4. Summary Judgment in Favor of Franchisee on Reed's Constructive Discharge Claim

In her third point on appeal, Reed argues that the trial court erred in granting summary judgment in favor of Franchisee on her constructive discharge claim. Franchisee argues that it is entitled to judgment as a matter of law with respect to Reed's constructive discharge claim because Reed failed to exhaust her administrative remedies by failing to allege constructive discharge in her charges to the MCHR. Reed argues her charges of discrimination filed with the MCHR adequately put Franchisee on notice that it would face a claim of constructive discharge.

Section 213.075.1 states that a charge filed with the MCHR, within 180 days of the alleged act of discrimination, shall "set forth the particulars" of the unlawful discriminatory practice. The MHRA requires that all administrative remedies be exhausted before petitioning the courts for relief. *Alhalabi v. Missouri Department of Natural Resources*, 300 S.W.3d 518, 524 (Mo.App. E.D.2009). In order to exhaust all administrative remedies, the claimant must give notice of all claims in the administrative complaint. *Id.* at 525. However, "administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." *Id.* Accordingly, administrative remedies will be exhausted as to all incidents that are like or reasonably related to the allegations contained in the charges filed with the MCHR. *Id.* Furthermore, "the scope of the civil suit may be as broad as the scope of the administra-

tive investigation which could reasonably be expected to grow out of the charge of discrimination." *Id.*

Reed argues that her claim of constructive discharge is reasonably related to the allegations contained in her charges of discrimination filed with the MCHR and an administrative investigation of a constructive discharge claim could reasonably be expected to grow out of her charges. We disagree. Here, Reed's charges filed with the MCHR did not even mention that she no longer worked for Franchisee. The charges failed to mention any facts or particulars relating to intolerable working conditions causing her to quit working for Franchisee. Instead, Reed's charges filed with the MCHR and the EEOC focused only on conduct by Emanuel. By focusing only on Emanuel's conduct towards Reed, the charges failed to give notice to Franchisee that Reed was asserting a claim of constructive discharge. Furthermore, it is not reasonable to expect an administrative investigation of a claim of constructive discharge when Reed's charges did not even state that Reed no longer worked for Franchisee nor any facts relating to intolerable working conditions. Accordingly, Reed failed to exhaust her administrative remedies when she failed to include any facts reasonably related to a claim of constructive discharge. As such, she was barred from pursuing a claim of constructive discharge, and the trial court did not err in granting summary judgment in favor of Franchisee on Reed's constructive discharge claim. Point three is denied.

**B. Default Judgment Against Emanuel**

In her fourth and final point on appeal, Reed claims the trial court erred in awarding her only $25,000 in damages in the default judgment entered against Emanuel. Reed contends the award was against the weight of the evidence because her uncontroverted testimony established that she sustained $500,000 in damages.

Our review of a court-tried case is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Thompson v. Rockett*, 313 S.W.3d 175, 180 (Mo.App. S.D.2010). We view the evidence and all reasonable inferences therefrom in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Id.* at 181. We defer to the trial court's determination of witness credibility and recognize that the court is free to accept all or reject all, part or none of the testimony presented. *Id.*

Here, the trial court held a hearing and heard testimony on the issue of the amount of damages Reed should be awarded in the default judgment entered against Emanuel. The trial court's judgment assessing and awarding Reed damages expressly found some of Reed's testimony regarding damages credible and other portions of her testimony regarding damages not credible. Although Reed testified that she suffered $500,000 in damages, the trial court was free to accept or reject all or part of her testimony. Accordingly, the trial court did not err in awarding Reed $25,000 in damages in the default judgment entered against Emanuel. Point four is denied.

### III. CONCLUSION

We reverse the trial court's grant of summary judgment in favor of Franchisee as to Reed's count alleging sexual harassment and the cause is remanded for further proceedings in accordance with this opinion. The trial court's grant of summary judgment in favor of Davis as to all

counts, the trial court's grant of summary judgment in favor of Franchisee as to Reed's claim of sexual discrimination in the form of constructive discharge, and the trial court's award of $25,000 in the default judgment entered against Emanuel are affirmed.

KURT S. ODENWALD, C.J. and GARY M. GAERTNER, JR., J., concur.