# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1966

_____

Randy R. Henson

*Plaintiff - Appellant*

v.

Union Pacific Railroad Company; Foster B. McDaniel

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 18, 2021
Filed: July 8, 2021

_____

Before SMITH, Chief Judge, WOLLMAN and STRAS, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Randy Henson began working for the predecessor of Union Pacific Railroad Company (Union Pacific) in 1979. Following more than thirty years with the railroad, Henson filed a charge with the Missouri Commission on Human Rights (the Commission) and the Equal Employment Opportunity Commission (EEOC) in October 2017, alleging a hostile work environment and ongoing age discrimination and retaliation. Henson asserted that he had been subjected to position changes and

harassing comments. Henson retired effective August 1, 2018, at the age of sixty-three. Soon thereafter, Henson received a requested right-to-sue letter from the Commission.

As relevant to this appeal, Henson filed suit against Union Pacific in Missouri state court, alleging age discrimination, constructive discharge, and hostile work environment[1] claims under the Missouri Human Rights Act (MHRA). Henson also sued Missouri resident Foster B. McDaniel, claiming that McDaniel aided and abetted Union Pacific in its discriminatory acts. Union Pacific removed the case to federal district court[2] on the basis of diversity, claiming that McDaniel had been fraudulently joined. McDaniel moved to dismiss the claims against him, claiming that Henson's complaint failed to state a claim. Henson moved to remand the case to state court.

Determining that McDaniel had been fraudulently joined to destroy diversity jurisdiction, the district court granted McDaniel's motion to dismiss and denied Henson's motion to remand. After answering the complaint, Union Pacific moved for judgment on the pleadings, which was granted on Henson's constructive discharge claim and corresponding age discrimination and retaliation claims. The district court later granted Union Pacific's motion for summary judgment on Henson's hostile work environment claim. We affirm.

## I. Motion to Dismiss

Henson argues that the district court erred in denying his motion to remand and in dismissing his aiding-and-abetting claims against McDaniel. We review *de novo*

[1]Henson's hostile work environment claim was added via amended complaint filed in federal court. The amended complaint set forth no new facts.

[2]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

a fraudulent joinder challenge, Wilkinson v. Shackelford, 478 F.3d 957, 963 (8th Cir. 2007), "resolv[ing] all facts and ambiguities in the current controlling substantive law in the plaintiff's favor," Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 811 (8th Cir. 2003). "[I]t is well established that if it is clear under governing state law that the complaint does not state a cause of action against the nondiverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 406 n.6 (8th Cir. 1977). "However, if there is a 'colorable' cause of action—that is, if the state law *might* impose liability on the resident defendant under the facts alleged—then there is no fraudulent joinder." Filla, 336 F.3d at 810 (footnote omitted).

The MHRA prohibits both discrimination in employment on the basis of age, Mo. Rev. Stat. § 213.055(1)(a), and retaliation for opposing unlawful discrimination, id. § 213.070.1(2). It provides in relevant part that "[i]t shall be an unlawful discriminatory practice for an employer . . . [t]o aid[ or] abet . . . the commission of acts prohibited under this chapter." Id. § 213.070.1(1). Missouri law defines "aiding and abetting" as "affirmatively act[ing] to aid the primary tortfeasor" by giving "substantial assistance or encouragement" to him. Bradley v. Ray, 904 S.W.2d 302, 315 (Mo. Ct. App. 1995); see also Markham v. Wertin, 861 F.3d 748, 755 (8th Cir. 2017). To the extent that the MHRA provided for individual liability prior to August 2017,[3] "Missouri cases have only allowed for [such liability] when the individuals directly oversaw or were actively involved in the discriminatory conduct." Reed v. McDonald's Corp., 363 S.W.3d 134, 139 (Mo. Ct. App. 2012).

---

[3]The MHRA was amended effective August 2017. Bram v. AT&T Mobility Servs., LLC, 564 S.W.3d 787, 794 (Mo. Ct. App. 2018). The district court applied the current version, but Henson argues that the pre-August 2017 version should apply. We conclude that dismissal was proper under either standard, and thus we will assume without deciding that the pre-2017 version applies here. See R.M.A. ex rel. Appleberry v. Blue Springs R-IV Sch. Dist., 568 S.W.3d 420, 425 n.3 (Mo. 2019) (en banc).

Henson's complaint fails to make a colorable claim that McDaniel directly oversaw or was actively involved in discrimination. The complaint and administrative charge allege only two McDaniel-related specific facts: (1) McDaniel is a Missouri resident who supervises at least six employees, and (2) "On or abut [sic] June 21, 2017, Plaintiff confronted manager Foster B. McDaniel, as to what would happen to him. Mr. McDaniel replied, 'don't worry, this job will be yours as long as you want it. After you retire the job will be eliminated.'" Although Henson asserts that McDaniel's statement was false, this allegation fails to show that McDaniel aided and abetted by providing "substantial assistance or encouragement" to Union Pacific in its allegedly discriminatory actions. See Stoker v. Lafarge N. Am., Inc., No. 4:12-cv-0504-DGK, 2013 WL 434049, at *3 (W.D. Mo. Feb. 5, 2013) (complaint failed to state a claim of aiding and abetting discrimination when it alleged only that the defendant had made statements indicating that he "was out to get" the plaintiff and had a close relationship with the discriminating party). The complaint likewise fails to allege any McDaniel-specific facts related to Henson's protected activity—filing his administrative charge—and thereby does not make a colorable claim that McDaniel retaliated or aided and abetted retaliation against Henson. Cf. Keeney v. Hereford Concrete Prods., Inc., 911 S.W.2d 622, 625 (Mo. 1995) (en banc) ("Section 213.070 prohibits retaliation 'in any manner.' To retaliate is to 'inflict in return.'" (citation omitted)). The complaint's remaining references to McDaniel are broad, conclusory allegations, which are insufficient to state a claim against him. See Block v. Toyota Motor Corp., 665 F.3d 944, 950 (8th Cir. 2011) ("The conclusory allegations in the complaint . . . are insufficient . . . ."). Dismissal on the basis of fraudulent joinder was therefore proper.

## II. Motion for Judgment on the Pleadings

Henson argues that the district court erred in granting Union Pacific's motion for judgment on the pleadings on Henson's constructive discharge claim. The district court determined that Henson had failed to administratively exhaust the claim because

he resigned from Union Pacific after filing his charge and never filed an amendment expressly alleging constructive discharge. The district court further determined that such a discrete claim could not be "reasonably related" to the charged claims.

We review *de novo* a grant of "judgment on the pleadings, viewing all facts pleaded by the nonmoving party as true and granting all reasonable inferences in favor of that party." Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009) (cleaned up). Judgment on the pleadings is proper when "no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Id. (citation omitted).

Missouri law requires plaintiffs to exhaust their administrative remedies prior to bringing MHRA claims. Mo. Rev. Stat. § 213.075.1. "[E]xhaustion requires a claimant to give notice of all claims of discrimination in the administrative complaint, but administrative complaints are interpreted liberally in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." Alhalabi v. Mo. Dep't of Nat. Res., 300 S.W.3d 518, 525 (Mo. Ct. App. 2009). Because "administrative remedies are deemed exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the administrative charge[,] . . . the scope of the civil suit may be as broad as the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination." Id. However, "it is not reasonable to expect the [investigating agency] to look for and investigate [discrete] adverse employment actions if they are nowhere mentioned in the administrative charge." Parisi v. Boeing Co., 400 F.3d 583, 586 (8th Cir. 2005); see also Lin v. Ellis, 594 S.W.3d 238, 242 (Mo. 2020) (en banc) ("In deciding a case under the MHRA, [state] appellate courts are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." (citation omitted)).

"Constructive discharge occurs when an employer deliberately renders an employee's working conditions so intolerable that the employee is forced to quit his or her job." Wallingsford v. City of Maplewood, 287 S.W.3d 682, 686 (Mo. 2009) (en banc). A constructive discharge is a discrete act of discrimination or retaliation that stands separate and distinct from the continuing violation of a hostile work environment. See generally Green v. Brennan, 136 S. Ct. 1769, 1777 (2016) ("[In the claim-accrual context], a claim that an employer constructively discharged an employee is no different from a claim that an employer actually discharged an employee."); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112–13 (2002); see also Wallingsford, 287 S.W.3d at 686 ("Claims of constructive discharge often include evidence of subtle discrimination in the form of social coercion, demotions or changes in job responsibilities. As a result, constructive discharge is a fact-intensive inquiry.").

Henson argues that his charge administratively exhausted his constructive discharge claim because the claim is "reasonably related" to his charge allegations. As potentially relevant to his constructive discharge claim, Henson's charge alleged:

> I felt I was being set up to fail so that when I did the company could terminate me. Furthermore, the company was conveniently assigning older employees to jobs that were physically demanding, all in their [sic] plan to set us up to fail and terminate us.
>
> * * *
>
> We were not included nor [sic] considered as part of the team. Again, the company was pushing older employees out.
>
> * * *
>
> The continuing pattern of the above events are [sic] wholly directed as a means into a forced retirement and a termination of a loyal 38 years of distinguish [sic] service. There is no foreseeable trend that indicates that

the Union Pacific Railroad values my extensive knowledge and experience in favor of eliminating my position. The current climate/environment of the company is hostile towards workers like me, older, and it is in favor of the younger generation workers. We, the older employees, are constantly being set up for failure and in [sic] working environment that offers no means of success, except to accept the conditions of career surrender, which I am not yet willing to do.

We conclude that Henson's constructive discharge claim is not reasonably related to his charge allegations. Henson did not assert in his charge that he had been or was about to be constructively discharged. Cf. Reed, 363 S.W.3d at 144 (constructive discharge claim not reasonably related to discrimination claims when plaintiff's charges "did not even state that [she] no longer worked for [the defendant] nor any facts relating to intolerable working conditions"). But see Wedow v. City of Kan. City, 442 F.3d 661, 674–75 (8th Cir. 2006) (post-charge-filing retaliation claims reasonably related when charge stated that acts of retaliation were "ongoing and continuing" and when subsequent retaliatory acts were "of identical character" to charged acts); Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 852 n.1 (8th Cir. 2012) (per curiam) (distinguishing Wedow and characterizing the court in Wedow as "[thinking] it was unnecessary for the complainants to file a new administrative charge with respect to each continuing incident of retaliation" that had already been alleged). Indeed, Henson's assertion that he was "not yet willing to" "accept the conditions of career surrender" despite feeling like "[w]e, the older employees, are constantly being set up for failure" is evidence to the contrary. Cf. Green, 136 S. Ct. at 1778 ("An employee who suffered discrimination severe enough that a reasonable person in his shoes would resign might nevertheless force himself to tolerate that discrimination for a period of time."). Henson's alleged constructive discharge did not occur until approximately nine months after his charge had been filed. And Henson's allegation that "[t]he continuing pattern of [alleged discrimination is] wholly directed as a means into a forced retirement and a termination" is more akin to merely checking a form's "continuing violation" box than to making the

substantive allegations necessary to administratively exhaust a constructive discharge claim. Cf. Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002) (concluding that merely checking the "sex discrimination" box on the charge form and making a conclusory allegation—in contrast to "a long, particularized account"—was insufficient to establish a reasonable relationship between the facts alleged in the charge and a sex discrimination claim), overruled in part on other grounds by Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004).

Putting aside the district court's conclusion that, as a matter of Missouri law, the reasonable relation theory cannot apply to post-charge discrete discriminatory acts,[4] we cannot conclude that based on Henson's charge as submitted the administrative investigation would have reasonably included his alleged constructive discharge claim. The claim was therefore not reasonably related to the charge allegations, and judgment on the pleadings was proper.

---

[4]The Tenth Circuit interprets Morgan as wholly overruling the reasonable relation theory as it relates to subsequent discrete acts. See, e.g., Chapman v. Carmike Cinemas, 307 F. App'x 164, 174 (10th Cir. 2009) (concluding that "[t]he 'reasonable relation' theory is no longer good law in cases involving discrete, easily identifiable incidents" such as constructive discharge). The district court relied on this Tenth Circuit precedent to conclude that "the 'reasonable relation' theory does not apply to [subsequent] 'discrete acts'" such as Henson's constructive discharge claim. D. Ct. Order of July 15, 2019, at 7 (citing id.). We do not agree that the Missouri Supreme Court would necessarily adopt the Tenth Circuit's restrictive interpretation of the reasonable relation theory. See Wedow, 442 F.3d at 673 (declining to adopt the Tenth Circuit's view of Morgan and concluding that "[w]hile our court has narrowed its view of what subsequent acts are sufficiently related to be within the scope of the properly filed administrative charges, we have not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted").

III. Motion for Summary Judgment

Henson also argues that the district court erred in granting summary judgment in favor of Union Pacific on his hostile work environment claim.

We review *de novo* a district court's grant of summary judgment. LeGrand v. Area Res. for Cmty. & Hum. Servs., 394 F.3d 1098, 1101 (8th Cir. 2005). To prevail on an age-based hostile work environment claim under the MHRA, a plaintiff must show, in relevant part, that he was harassed, that his age was either a motivating or contributing factor in the harassment,[5] and that "a term, condition, or privilege of [his] employment was affected by the harassment." McGaughy v. Laclede Gas Co., 604 S.W.3d 730, 748 (Mo. Ct. App. 2020). A plaintiff's term, condition, or privilege of employment is affected by harassment only "if [the harassment] is sufficiently severe or pervasive . . . to alter the conditions of a plaintiffs [sic] employment and create an abusive working environment." Alhalabi, 300 S.W.3d at 527. Accordingly, even "some conduct well beyond the bounds of respectful and appropriate behavior is nonetheless insufficient" to be severe and pervasive. Paskert v. Kemna-ASA Auto Plaza, Inc., 950 F.3d 535, 538 (8th Cir. 2020).

Henson contends that the record contains sufficient evidence of age-based harassment.[6] Many of the incidents, however, are either unrelated to his age or do not

---

[5]We agree with the district court that the parties' dispute over whether this case is governed by the "motivating" or "contributing" standard is immaterial.

[6]Henson points to evidence of the following: a manager asserted that Henson had too much vacation time; unknown employees twice posted overtime- or intelligence-related jokes about Henson; Union Pacific temporarily transferred Henson—without changing his title, pay, or benefits—to a different position at which he worked longer hours; and a manager commented, "Man. They sure like f---ing you. If I had your time in, I wouldn't put up with it. I'd pull the pin and get out of here."

rise to the level of harassment. See Moses v. Dassault Falcon Jet-Wilmington Corp., 894 F.3d 911, 922 (8th Cir. 2018) (concluding that the plaintiff "has not linked any of these allegedly harassing actions to his age . . . . [and therefore] has failed to show that the harassment resulted from his membership in a protected class"). Two incidents involving Union Pacific Manager Patrick Foley could be construed as age-related harassment. Henson alleges that Foley made comments about Henson no longer working for Union Pacific and on one occasion asked Henson if he had considered retirement. When Henson responded that he did not intend to retire, Foley remarked, "Well, if it makes any difference in your retirement plans, your job's going to be gone by Halloween." Foley's questions appear to be a legitimate retirement inquiry—given Foley's managerial planning interests, Henson's understanding that "your job" meant his current position—not necessarily his employment with Union Pacific—and the likelihood that Henson's role would soon change. See Cox v. Dubuque Bank & Tr. Co., 163 F.3d 492, 497 (8th Cir. 1998) (collecting cases and concluding that "neither state nor federal law prohibits an employer from making retirement inquiries reasonable under the circumstances" (internal quotation marks omitted)). On another occasion, Henson asked Foley for a locomotive-lifting device, to which Foley responded by handing Henson a printed photo of an electric motorized chair that contained an image of Henson's face pasted onto the chair seat. Foley allegedly stated, "Old bastards like you need a lifting device. Here's your electric chair." Assuming that this incident constituted age-related harassment, it alone did not rise to the level of harassment "so intimidating, offensive, or hostile that it poisoned the work environment." Watson v. Heartland Health Labs., Inc., 790 F.3d 856, 861 (8th Cir. 2015) (citation omitted).

We therefore conclude that summary judgment was properly granted in light of the lack of evidence constituting age-based harassment sufficiently severe or pervasive to establish the existence of a hostile work environment.

## Conclusion

The judgment is affirmed.

_____