Tamara COOPER, Appellant,

v.

ALBACORE HOLDINGS, INC., d/b/a Abiliti Solutions, Inc., Daleen Solutions, Inc. and Gordon Quick, Respondents.

No. ED 87027.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 29, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 11, 2006.

Application for Transfer Denied
Nov. 21, 2006.

Jerome J. Dobson, Michelle Dye Neumann, Weinhaus, Dobson, Goldberg & Moreland, St. Louis, MO, for appellant.

Gerard T. Carmody, Kelley F. Farrell, Erwin O. Switzer, III, Carmody MacDonald P.C., Clayton, MO, for respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Tamara Cooper ("Cooper"), appeals the judgment of the Circuit Court of St. Louis County granting Respondents', Albacore Holdings, Inc., d/b/a Abiliti Solutions, Inc. ("Employer"), Daleen Solutions, Inc. and Gordon Quick ("Quick"), motion for summary judgment. Cooper filed a two-count petition against Respondents alleging sexual harassment and retaliation in violation of the Missouri Human Rights Act ("the MHRA") in Count I and battery in Count II. We affirm in part and reverse and remand in part.

The following is the evidence from the record viewed in the light most favorable to Cooper:

Cooper began working for Employer on February 1, 1999. From February 1, 1999 until February 1, 2000, Cooper worked as a Recruiting Manager in the Human Resources Department. From February 1, 2000 through approximately June 1, 2000, Cooper held the position of Director of Human Resources. On or about June 2, 2000, Cooper was promoted to the position of Vice President of Human Resources.

Cooper was a member of the Senior Business Team and reported directly to Quick, Employer's Chief Executive Officer ("CEO"). Cooper was the only female in the seven member Senior Business Team.

At approximately 7:30 p.m. on July 16, 2002, Cooper, Quick and four other members of the Senior Business Team arrived at a dinner party ("the dinner party") at La Piazza restaurant in St. Louis County. When the group was seated at their table, Quick sat next to Cooper. About fifteen minutes after being seated, Quick knocked a glass of wine onto the front of Cooper's blouse and slacks. While Cooper was trying to get the wine off of herself, Quick used his napkin to assist Cooper. Through the use of his napkin, Quick touched Cooper's breasts, chest above her breasts, thigh, torso and arm. Cooper told Quick to stop touching her several times, but he continued to touch her with his napkin. Quick attempted to touch her several more times during the dinner party. Cooper tried to scoot out of the way to avoid the touching.

Later in the evening, Quick suggested to Cooper that she "could take [her] shirt off, nobody would mind." Quick also made comments about her undergarments. Additionally, Quick commented that Cooper had not eaten her dinner, stated that she needed to put more meat on her bones, and pinched her waist. Some of the other members of the Senior Business Team tried to get Quick to stop behaving in this manner towards Cooper. The dinner party ended at approximately 10 p.m. When the dinner party concluded, Quick asked Cooper to go home with him and told her that his wife would not mind. Cooper declined the invitation and John Trecker and Keith Nelson, whom she had carpooled with from the office, drove her back to her car.

Cooper called Employer each of the next two days and told Cindi Counts ("Counts"), a Human Resources employee, that she would not be coming into work. Cooper did not indicate to Counts that the reason for her absence was due to Quick's conduct at the dinner party. Cooper never returned to work after the dinner party. Cooper never sent Employer a letter of resignation nor did she speak about resigning to anyone who works for Employer. She also did not follow Employer's internal procedures for making a sexual harassment complaint.

On July 24, 2002, eight days after the dinner party, Cooper's attorney, William Weidle ("Weidle"), sent a letter addressed to both Quick and Employer advising that Weidle had been engaged by Cooper in connection with her claims of sexual discrimination and battery. In August of 2002, when Cooper began searching for a new job, Mark Wright ("Wright"), the Chief Financial Officer for Employer, spoke with Kevin Cantwell ("Cantwell"), the president of Big River Telephone and a potential employer of Cooper. Cooper claims that Cantwell told her that during his conversation with Wright, Wright mentioned he had heard that Cooper had received a boob job and made a comment about Cooper starting to date someone who worked for Employer. Cooper further asserts that, as a result of this conversation, Cantwell questioned Cooper's character and told her he didn't think it was a good time for her to work for him.

On January 13, 2004, after receiving a notice of the right to sue from the Missouri Human Rights Commission, Cooper filed a two-count petition alleging sexual harassment and retaliation in violation of the MHRA in Count I and battery in Count II. On June 3, 2005, Respondents filed a motion for summary judgment as to all of Cooper's claims. On August 26, 2005, the

trial court granted Respondents' motion for summary judgment as to all claims made by Cooper. This appeal by Cooper followed.

When considering appeals from summary judgments, our review is essentially *de novo*. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). We review the record in the light most favorable to the party against whom the trial court rendered judgment. *Id.* The non-movant is entitled to the benefit of all reasonable inferences from the record. *Id.* The summary judgment movant has the burden of proving he has a legal right to judgment and that there is no genuine issue as to any material fact required to support that right to judgment. *Id.* at 378.

■ When analyzing an employment discrimination case under the MHRA, we are guided not only by Missouri law, but also federal employment discrimination cases. *Cook v. Atoma Intern. of America, Inc.*, 930 S.W.2d 43, 45 (Mo.App. E.D. 1996).

Before addressing Cooper's first point on appeal, we will address her second and fourth points on appeal.

In her second point on appeal, Cooper asserts the trial court erred in granting Respondents' motion for summary judgment as to her sexual harassment claim against Employer because Employer failed to show that it exercised reasonable care to prevent and promptly correct the harassing behavior. Cooper also asserts that Employer failed to prove that she unreasonably failed to take advantage of available preventive or corrective opportunities or otherwise avoid harm.

■ When no tangible employment action is taken, an employer is not liable for a supervisor's harassing conduct if: (1) the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise, and (2) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior. *Williams v. Missouri Department of Mental Health*, 407 F.3d 972, 976 (8th Cir.2005). "[W]hile a victim of sexual harassment may legitimately feel uncomfortable discussing the harassment with an employer, that inevitable unpleasantness cannot excuse the employee from using the company's complaint mechanisms." *Id.* at 977.

■ Employer had in place a detailed sexual harassment policy. Cooper, through her position as Vice President of Human Resources, was well aware of how to properly file a sexual harassment complaint with Employer. However, Cooper failed to use the preventive and corrective mechanisms offered by Employer. Cooper admitted that she would not have advised someone in her situation that they should just never come back to work. Cooper's first complaint about harassment was revealed in a letter dated eight days after she had stopped coming into work for Employer. Thus, Cooper unreasonably failed to take advantage of the preventive or corrective opportunities provided by Employer.

There is also evidence that Employer did initiate an investigation into Cooper's allegation of sexual harassment after receiving the letter from Weidle. Furthermore, Cooper's failure to ever return to work after the evening of the dinner party made it impossible for Employer to take preventive action to protect Cooper from any further potential sexual harassment. Therefore, the trial court did not err in granting summary judgment in favor of Employer as to Cooper's sexual harassment claim against Employer. Point denied.

In her fourth point on appeal, Cooper contends the trial court erred in granting Respondents' motion for summary judgment as to her sexual harassment claim against Quick because the plain language of the MHRA provides for individual liability.

Section 213.055.1(1)(a), RSMo 2000[1] of the MHRA provides in pertinent part that it is an unlawful employment practice "[f]or an *employer* ... to discriminate against any individual ... because of such individual's race, color, religion, national origin, sex, ancestry, age or disability." Section 213.055.1(a) (emphasis added). The term "employer" includes "any person employing six or more persons within the state, and *any person directly acting in the interest of an employer ....*" Section 213.010(7) (emphasis added).

 The primary rule of statutory construction is to determine the legislature's intent from the statute's language. *Tuft v. City of St. Louis,* 936 S.W.2d 113, 118 (Mo.App. E.D.1996). We will give effect to the legislative intent if possible, and consider the words in their plain and ordinary meaning. *Id.* When the language of the statute is unambiguous, we are afforded no room for construction. *Id.* at 118–19.

In interpreting provisions of the MHRA, Missouri courts have often looked at federal case law and case law from other states interpreting analogous statutes. *Sloan v. Bankers Life & Cas. Co.,* 1 S.W.3d 555, 561 (Mo.App. W.D.1999).

Whether the MHRA provides for individual liability is an issue of first impression for this court. The issue also has not yet been decided by the Missouri Supreme Court.

Respondents contend that we should adopt the prediction set out in *Lenhardt v.*

*Basic Institute of Technology, Inc.,* 55 F.3d 377 (8th Cir.1995). The court in *Lenhardt* predicted that the Missouri Supreme Court would interpret the definition of "employer" within the MHRA in a manner similar to the interpretation federal courts have given to the definition of "employer" within Title VII of the Civil Rights Act of 1964 ("Title VII"). *Id.* at 381. Thus, the court in *Lenhardt* predicted that the Missouri Supreme Court would find that the MHRA does not subject employees, including supervisors or managers, to individual liability. *Id.* at 381. However, "[w]ith all due respect to the Eighth Circuit, the Missouri Supreme Court does not blindly follow the 'predictions' of the federal courts." *Hill v. Ford Motor Company,* 324 F.Supp.2d 1028, 1032 (E.D.Mo.2004).

Under Title VII, "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and *any agent of such a person ....*" 42 U.S.C. section 2000e(b) (emphasis added). Many federal courts have held, in applying the above language of Title VII, that supervisors and other employees cannot be held individually liable for their discriminatory conduct. These federal courts have reasoned that the language "any agent of such a person" within the definition of "employer" in Title VII is designed to incorporate *respondent superior* liability rather than to expose supervisors or co-workers to individual liability in employment discrimination cases. *See, e.g., Miller v. Maxwell's International Inc.,* 991 F.2d 583, 587 (9th Cir.1993); *Smith v. Amedisys Inc.,* 298 F.3d 434, 448 (5th Cir.2002); *Yesudian v. Howard University,* 270 F.3d 969, 972 (D.C.Cir.2001).

Cooper directs our attention to *Genaro v. Central Transport, Inc.,* 84 Ohio St.3d 293, 703 N.E.2d 782 (1999). In *Genaro,* the Ohio Supreme Court found that the

1. All statutory references are to RSMo 2000, unless otherwise indicated.

clear and unambiguous language of section 4112.01 of the Ohio Revised Code imposes individual liability on managers and supervisors *for their own discriminatory conduct.* *Id.* at 787–88. The provision at issue in *Genaro* defined "employer" as "any person employing four or more persons within the state ... and *any person acting directly or indirectly in the interest of an employer.*" Ohio Rev.Code section 4112.01(A)(2) (emphasis added). The court in *Genaro* remarked that the definition of "employer" within Title VII was far less reaching than the definition of "employer" within the Ohio Revised Code. *Id.* at 787.

In *Darby v. Bratch,* 287 F.3d 673 (8th Cir.2002), the court interpreted the definition of "employer" under the Family and Medical Leave Act ("the FMLA"). The definition of "employer" under the FMLA includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. section 2611(4)(A)(ii)(I). The court in *Darby* found that the definition of "employer" under the FMLA "plainly includes persons other than the employer itself." 287 F.3d at 681. In addition, the court in *Darby* held that "[i]f an individual meets the definition of employer as defined by the FMLA, then that person should be subject to liability in his individual capacity." *Id.*

The wording of the definition of "employer" within the MHRA is nearly identical to the definition of "employer" at issue in *Genaro.* Furthermore, the wording of the definition of "employer" within the MHRA is more analogous to the FMLA definition of "employer" rather than the Title VII definition of "employer." *See Hill,* 324 F.Supp.2d at 1033. The Missouri legislature chose to employ language within the MHRA definition of "employer" that is broader in scope than that found in Title VII.

■ We agree with the findings in *Genaro* and *Darby.* We find that the plain and unambiguous language within the definition of "employer" under the MHRA imposes individual liability in the event of discriminatory conduct. In this case, Quick, as the CEO of Employer, falls within the definition of "employer" under the MHRA. Therefore, Quick may be found individually liable for sexual harassment under the MHRA. Point granted.

In her first point on appeal, Cooper claims the trial court erred in granting Respondents' motion for summary judgment as to her sexual harassment claim because the alleged conduct was sufficiently severe or pervasive as to constitute a hostile work environment under the MHRA. In light of our holding in favor of Employer on Cooper's second point on appeal and our holding that Quick may be found individually liable under the MHRA on Cooper's fourth point on appeal, we need only determine whether the trial court erred in granting Respondent's motion for summary judgment as to Cooper's sexual harassment claim against Quick.

■ To prevail on a claim of sexual harassment, it must be proven that: (1) the plaintiff is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; and (4) the harassment affected a term, condition, or privilege of employment. *Mason v. Wal–Mart Stores, Inc.,* 91 S.W.3d 738, 742 (Mo.App. W.D.2002).

■ Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment. *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir.1998). The conduct must be sufficient to create a hos-

tile work environment, both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person. *Id.* "Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Id.* In assessing the hostility of an environment, we look to the totality of the circumstances. *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 27 F.3d 1316, 1327 (8th Cir.1994).

The crux of this point on appeal is whether there is a genuine issue of material fact as to whether the alleged harassment in this case was severe or pervasive enough to alter the conditions of Cooper's employment and create an abusive working environment.

The evidence viewed in the light most favorable to Cooper indicates that, on the evening of the dinner party, Cooper was subjected to several instances of improper conduct by Quick. After Quick spilled wine on Cooper, he continued to touch her breasts and the area around her breasts with his napkin after she repeatedly told him to stop. Quick attempted to touch Cooper several more times throughout the night despite Cooper's attempt to move away. Cooper was also subjected to several offensive comments from Quick throughout the night, including comments about her undergarments and Quick's comment that she "could take [her] shirt off, nobody would mind." In addition, at the end of the dinner party, Quick told Cooper that his wife would not mind if she came home with him.

▪ Cooper summed up her subjective offense as to what transpired at the dinner party by stating that "[i]t was an entire evening of embarrassment and humiliation." Furthermore, it was the CEO of her employer whom subjected her to this embarrassment and humiliation in front of other male members of the Senior Business Team. Thus, through assessment of the totality of the circumstances, we find there is a genuine issue as to whether a reasonable person would objectively consider Quick's behavior towards Cooper severe enough to alter the conditions of her employment and create an abusive working environment. Therefore, the trial court erred in granting Respondents' motion for summary judgment as to Cooper's sexual harassment claim against Quick. Point granted.

In her third point on appeal, Cooper maintains the trial court erred in granting Respondents' motion for summary judgment as to her retaliation claim because she established a prima facie case for retaliation.

Under the MHRA, it is an unlawful discriminatory practice "[t]o retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint...." Section 213.070(2), RSMo 2000.

▪ To establish a prima facie case of retaliatory discrimination a plaintiff must prove that: (1) she complained of discrimination; (2) the employer took adverse action against her; and (3) a causal relationship existed between the complaint of discrimination and the adverse employment action. *Thompson v. Western–Southern Life Assur.,* 82 S.W.3d 203, 207 (Mo.App. E.D.2002).

▪ If a witness offers the out-of-court statements of another person to prove the truth of the matter asserted in the statement, then the testimony is hearsay. *Bynote v. National Super Markets, Inc.,* 891 S.W.2d 117, 120 (Mo.banc 1995). Hearsay statements cannot be considered in ruling on the propriety of summary judgment. *Muegler v. Berndsen,* 964 S.W.2d 459, 463 (Mo.App. E.D.1998).

Only evidence that is admissible at trial can be used to sustain or avoid summary judgment. *Id.*

■ In its memorandum in support of summary judgment, Employer asserted, *inter alia*, that Cooper cannot show retaliation because she cannot prove that Employer took any adverse action against her as a result of complaining about being the victim of discrimination. The only evidence in the record that serves as a rebuttal to this assertion is Cooper's statement in her deposition that Cantwell told her that during his conversation with Wright, Wright said he had heard Cooper received a boob job and was starting to date someone who worked for Employer. According to Cooper, as a result of this alleged conversation between Cantwell and Wright, Cantwell questioned Cooper's character and told her he didn't think it was a good time for her to work for him. However, Cooper's statement in her deposition as to what Cantwell told her Wright said to him is hearsay evidence which would be inadmissible at trial. Therefore, the trial court did not err in granting Respondents' motion for summary judgment as to Cooper's retaliation claim. Point denied.

In her fifth point on appeal, Cooper alleges the trial court erred in granting Respondents' motion for summary judgment as to her battery claim against Quick because the question of whether Quick's contact was offensive is a question for the jury.

■ A battery consists of intended, offensive bodily contact with another person. *Duvall v. Lawrence*, 86 S.W.3d 74, 80 (Mo.App. E.D.2002). "Contact with the body is offensive if it offends a reasonable sense of personal dignity." *J.D. v. M.F.*, 758 S.W.2d 177, 178 (Mo.App. E.D.1988).

■ Cooper alleges that Quick touched her breast, chest above her breasts, thigh, torso and arm, and that such contact was offensive. There is no dispute that Quick intended to touch Cooper's body with his napkin. During her deposition, Cooper stated that Quick continued to touch her after she told him to stop several times. It is conceivable that a juror could find that that the contact at issue in this case offends a reasonable sense of personal dignity. Thus, there is a genuine issue as to whether the contact was offensive. Therefore, the trial court erred in granting Respondents' summary judgment motion as to Cooper's battery claim against Quick. Point granted.

Based upon the foregoing, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

GEORGE W. DRAPER III, J. and KENNETH M. ROMINES, J., concur.