

# In the Missouri Court of Appeals
# Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| M.S. Bracely-Mosley, | ) | No. ED110687 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 18SL-CC01164 |
| | ) | |
| Hunter Engineering Co., | ) | Honorable Kristine Kerr |
| | ) | |
| Respondent. | ) | Filed: March 28, 2023 |

### Introduction

Appellant M.S. Bracely-Mosley filed a two-count petition against her employer, Respondent Hunter Engineering Co. (Employer), alleging sex discrimination and retaliation in violation of the Missouri Human Rights Act (MHRA). The Circuit Court of St. Louis County granted Employer's motion for summary judgment on both counts. We affirm the summary judgment of the trial court.

### Factual and Procedural Background

"[O]nly those material facts set forth in the parties' statements of facts may be considered in determining whether summary judgment is appropriate." *Columbia Mut. Ins. Co. v. Heriford*, 518 S.W.3d 234, 240 (Mo. App. S.D. 2017). Because the parties' briefs do not fairly and concisely state the material facts, we revisit summary judgment procedure and our briefing requirements before stating the material facts.

*Summary Judgment Procedure and Statement of Facts on Appeal*

Summary judgment is based on facts established pursuant to a movant's statement of uncontroverted material facts under Rule 74.04(c)(1), and the non-movant's responses under Rule 74.04(c)(2).[1] *Fleddermann v. Casino One Corp.*, 579 S.W.3d 244, 248 (Mo. App. E.D. 2019). The movant's statement of uncontroverted material facts must state with particularity each material fact as to which the movant claims there is no genuine issue, with specific references to supporting pleadings, discovery, exhibits or affidavits. Rule 74.04(c)(1). The non-movant's response must either admit or deny, with specific references to discovery, exhibits, or affidavits demonstrating specific facts showing there is a genuine issue, each of the movant's statements of fact. Rule 74.04(c)(2). If the non-movant does not properly deny a statement of fact, that fact is deemed admitted. *Id.* If the non-movant files a statement of additional material facts, the process repeats itself, but with the non-movant stating material facts, supported in the same manner, to which the movant must respond. Rule 74.04(c)(2)-(3).

Our review of summary judgment is limited to the undisputed material facts established in the process set forth in Rule 74.04(c); we do not review the entire trial court record. *Fleddermann*, 579 S.W.3d at 248; *see also Green v. Fotoohighiam*, 606 S.W.3d 113, 117 (Mo. banc 2020). We look exclusively to the step-by-step procedure mandated by Rule 74.04 to determine whether there is a genuine issue of material fact. *Moore v. Scroll Compressors, LLC*, 632 S.W.3d 810, 819 (Mo. App. S.D. 2021).

On appeal, the import of this process is reflected in our briefing requirements. Pursuant to Rule 84.04(c), the appellant's brief must contain "a fair and concise statement of the facts relevant to the questions presented for determination without argument." *Fleddermann*, 579

---

[1] All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise indicated.

S.W.3d at 247. A statement of facts that fails to identify the material facts established by a motion for summary judgment, or properly denied by the opposing party's response, violates Rule 84.04(c). *Id.* at 248.

Here, Appellant takes issue in her reply brief with Employer's recitation of "its own statement of facts as if none of them are controverted." But Appellant's briefs suffer from the same deficiencies, and Appellant bore the initial duty to recite, fairly and concisely, the relevant facts. *See* Rule 84.04(a)(3), (c); *Fleddermann*, 579 S.W.3d at 249. Her failure to do so is sufficient to merit dismissal. *Fleddermann*, 579 S.W.3d at 246, 248-49; *Alvis v. Morris*, 520 S.W.3d 509, 510, 512 (Mo. App. S.D. 2017).

That said, this Court may occasionally review non-compliant briefs *ex gratia*. *Exec. Bd. of Missouri Baptist Convention v. Windermere Baptist Conf. Ctr., Inc.*, 430 S.W.3d 274, 285 (Mo. App. S.D. 2014). We do so here because the briefing deficiencies do not leave this Court without suitable facts for even *ex gratia* review and we may do so without advocating for either party. *See id.*; *see also Hink v. Helfrich*, 545 S.W.3d 335, 338 (Mo. banc 2018) ("[T]his Court prefers to dispose of cases on the merits if it can discern the argument being made.").

*Factual Background*

The facts properly before us in the summary judgment record are as follows. *See Green*, 606 S.W.3d at 121 ("[A]ny court—whether it be the circuit court addressing summary judgment in the first instance or an appellate court reviewing an entry of summary judgment—need only consult what was properly put before it by way of Rule 74.04(c) paragraphs and responses.").

Appellant has been employed by Employer since 2014. Throughout her employment, her supervisor has been Carla Krodinger (Supervisor). One of Appellant's co-workers was David Henke, a shipping clerk. Appellant's work area, supervised by Supervisor, was separate from the shipping area where Henke worked. Appellant and Henke have known each other for more than

3

15 years. The two worked at Chrysler from 2000 to 2009. Prior to working for Employer, Appellant had no problem with Henke, and she and Henke were "good friends."

<u>The August 2016 Incident</u>

On an unspecified date in August 2016, Henke "swiped" Appellant's behind with a cardboard box as Appellant left the breakroom for her workstation.[2] Appellant denied that she considered Henke's conduct a "traumatic emotional event." But immediately after it happened, Appellant told Henke, "I'm gonna get fired because you're getting ready to get hit. Don't touch me." And though Appellant did not file a complaint or grievance with Employer, she informed Supervisor of the incident on the day it occurred. Supervisor told Appellant she would ask Henke to stay out of Appellant's work area, but Supervisor did not recall ever asking or telling Henke to stay out of Appellant's work area.[3]

Nor did Supervisor ever inform Employer's human resources department (H.R.) of Appellant's complaint. According to Employer's director of H.R., Supervisor had an obligation to inform H.R. of Appellant's complaint regarding Henke's conduct, which, if true, would have violated Employer's sexual harassment policy. There is no evidence Employer investigated or interviewed witnesses regarding this complaint.

Five months passed before Appellant again alleged that Henke harassed her in any way.[4]

---

[2] Appellant admitted this fact in her response to Employer's statement of uncontroverted material facts but added, "defendant leaves out most of the facts relating to this incident," and offered a "more complete description." In the statement of facts in her appellate brief, she likewise alleges these additional facts. These facts did not contradict Employer's statement of uncontroverted material facts and Appellant did not include them in a statement of additional material facts "supplementing the record with competent materials that establish a plausible, but contradictory, version of at least one of the movant's essential facts." *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 380 n.1, 382, 387 (Mo. banc 1993). These facts therefore are not properly part of the summary judgment record and are not a fair and concise statement of the relevant facts, and we do not consider them on appeal. *See* Rules 74.04(c)(2), 84.04(c).

[3] In its statement of uncontroverted material facts, Employer alleged, "To Plaintiff's knowledge, [Supervisor] told Henke to stay out of Plaintiff's work area." Employer repeats this allegation in its appellate brief. Appellant properly denied this statement and it is genuinely disputed. *See* Rules 74.04(c)(2), 84.04(c), (f).

[4] In her statement of additional material facts, Appellant stated that Henke continued to come into her work area after the August 2016 incident. She repeats that statement in her appellate brief. Employer properly denied that

<u>The January 2017 Incident</u>

On January 10, 2017, Appellant was at her work station. When she turned around, there Henke stood with his hand cupped near Appellant's left breast. Had Appellant walked forward, her breast would have been in Henke's hand. Appellant jumped back saying, "Don't touch me." Henke did not touch Appellant. After work that evening, Henke texted Appellant, "Go home, get some sleep, and you need to stop watching porn."[5]

The next day, January 11, 2017, Appellant informed Supervisor of Henke's actions. Appellant told Supervisor "this wasn't the first time that he touched me in an inappropriate way." Supervisor spoke to her supervisor, and H.R. immediately opened an investigation of the January 2017 incident.

<u>Employer's Response</u>

H.R. began its investigation by interviewing Appellant on January 12, 2017, the day after Appellant's complaint. Appellant told H.R. she did not want to see Henke lose his job, but he needed to be suspended. H.R. asked if there had been any other incidents with Henke in the past. Appellant responded, "Dave touched my butt about six months ago. I told him to leave me alone." When H.R. spoke to Henke, it did not ask him about the August 2016 incident because it was not pertinent to the January 2017 incident. H.R. also interviewed three co-workers Appellant identified as witnesses to the January 2017 incident. Pending the outcome of the investigation,

---

statement and correctly responded that it was unsupported by the discovery Appellant referenced. Because the statement is not supported by the referenced discovery, we do not consider it. *See* Rules 74.04(c)(1), (2), 84.04(c); *Lemay Place Condo. Ass'n v. Frank*, 633 S.W.3d 503, 507-08 (Mo. App. E.D. 2021).

[5] Appellant admitted these statements in her response to Employer's statement of uncontroverted material facts but added, "defendant leaves out most of the facts relating to this incident" and offered a "more complete description." She also alleges these additional facts in her appellate brief. These facts did not contradict Employer's statement, they are not relevant on appeal, and we therefore do not consider them. *See ITT*, 854 S.W.2d at 380 n.1, 382, 387; Rules 74.04(c)(2), 84.04(c).

H.R. spoke with Employer's plant manager and supervisors to ensure Henke was not in Appellant's work area.

According to a journal entry by Appellant, on January 20, 2017, nine days after Appellant made her complaint, she was informed of "an altercation between [Henke] and [Appellant's] husband on the parking lot the day before after work, and that [Employer] cannot have people coming up on the job, and if it happen[s] again that [Appellant] would be fired."[6]

After the January 2017 incident, Appellant lost sleep and could not concentrate or focus.[7] Appellant cried, was irritable and afraid, and experienced headaches. She felt Henke's harassment impacted her relationship with her family and she generally experienced a loss of joy in her everyday life. Appellant worried about Henke returning to her work space and did not feel safe at work. She did not want to go to work anymore, for anybody to talk to her, or her husband to touch her. Appellant was always jumpy when people passed by. Supervisor told other employees to give Appellant notice before approaching her to avoid startling her.

On January 25, 2017, Appellant sought medical treatment. Appellant experienced stomach cramps, diarrhea, inability to eat, loss of appetite, vomiting, and weight loss. Her doctor recommended she take medical leave.

---

[6] Appellant cited this journal entry in support of her statement of additional material fact that Employer threatened to terminate her because of her complaint. Appellant reiterates that statement in her appellate brief. Employer properly denied the statement and correctly responded that it was unsupported by the journal entry. Because the statement is unsupported by the journal entry, we do not consider it. *See* Rules 74.04(c)(1), (2), 84.04(c); *Lemay Place*, 633 S.W.3d at 507-08.

[7] In her statement of additional material facts, Appellant stated several times, "Plaintiff's co-worker [name of co-worker] testified: . . ." and quoted the co-worker's affidavit. Appellant repeats the quoted testimony in her appellate brief. The existence of testimony generally is not a material fact in and of itself. *See Custer v. Wal-Mart Stores E. I, LP*, 492 S.W.3d 212, 215-16 (Mo. App. S.D. 2016) ("Unless the factual existence of certain deposition testimony is, in and of itself, an elements fact, its mere existence cannot be a material fact because it neither constitutes nor negates an element of a claim or affirmative defense. . . . Because Wal–Mart mischaracterizes deposition testimony as material facts, Custer cannot respond to a material fact, but rather is reduced to engaging in the meaningless activity of admitting or denying whether Wal–Mart accurately quoted deposition testimony. This useless exercise does not aid the trial court or this court in identifying the material facts or determining the existence of any genuine issue as to those facts."). These facts are not material, they are not relevant on appeal, and we therefore do not consider them. *See* Rules 74.04(c)(1), (2), 84.04(c).

Appellant had difficulty getting her medical leave. Normally, the paperwork was faxed to and from the doctor directly, but Employer told Appellant it did not receive her paperwork from her doctor. Appellant had to take the paperwork to her doctor and return it to Employer, and her doctor had to call Employer directly. After several weeks, Employer approved Appellant's application for medical leave.

At the end of its investigation, H.R. determined Henke sexually harassed Appellant on January 10, 2017. H.R. gave Henke a disciplinary letter on January 30, 2017. In the letter, H.R. informed Henke he was to serve an immediate one-day suspension.[8] Henke was prohibited from having any contact with Appellant. If his work duties required him to speak with Appellant or enter her work area, he had to first get his supervisor's permission. H.R. warned Henke that, if he retaliated against Appellant, he would face further disciplinary action up to and including termination. H.R. concluded its letter by requesting Henke resign his position as shop steward immediately. After issuing the disciplinary letter, H.R. spoke with the plant manager and supervisors to ensure Henke did not go anywhere near Appellant or her work area without permission.

Henke served his suspension. He later filed a union grievance, which was denied, and resigned as shop steward. Approximately 15 months later, in April 2018, Henke resigned from his job. During those 15 months, Appellant never had any other communication with Henke and never complained to H.R. of additional harassment.[9]

---

[8] Employer alleged in its statement of uncontroverted material facts that this suspension was without pay. But, as Appellant correctly pointed out, none of Employer's exhibits supported that statement. Though Employer repeats that allegation on appeal, we do not consider it. *See* Rules 74.04(c)(1), 84.04(c), (f).

[9] Employer stated and supported these facts and similar facts with specific references to discovery in its statement of uncontroverted material facts. In response, Appellant admitted the statements, or admitted them in part and denied them in part. Appellant based her denials on additional facts that did not contradict Employer's statements and she repeats those facts on appeal. For the reasons already explained, we do not consider those additional facts. *See ITT*, 854 S.W.2d at 380 n.1, 382, 387; Rules 74.04(c)(2), 84.04(c).

Appellant remains employed by Employer. There is no evidence that Appellant was disciplined or her compensation was changed after her complaint.

*Appellant's Petition and Employer's Motion for Summary Judgment*

On March 15, 2018, Appellant filed a four-count petition against Employer and Henke. Count I of the petition alleged sex discrimination against Employer based on the August 2016 and January 2017 incidents and a resulting hostile work environment. Count II alleged retaliation by Employer. Counts III and IV repeated those allegations against Henke, but Appellant never served Henke and subsequently dismissed those counts.

On April 1, 2022, Employer filed its motion for summary judgment. Regarding Count I, the sex discrimination count, Employer argued the alleged harassment did not affect a term, condition, or privilege of Appellant's employment, and Employer took appropriate remedial action. Regarding Count II, the retaliation count, Employer denied it took any adverse action against Appellant.

On May 26, 2022, after taking extensive briefing and hearing arguments, the trial court issued its order and judgment granting Employer's motion for summary judgment, and citing this Court's decision in *M.W. by & through K.W. v. Six Flags St. Louis, LLC*, 605 S.W.3d 400 (Mo. App. E.D. 2020).

**Standard of Review**

This Court reviews summary judgment *de novo*. *Brockington v. New Horizons Enters., LLC*, 654 S.W.3d 876, 880 (Mo. banc 2022). We view the record in the light most favorable to the party against whom summary judgment was entered. *Id.* at 877 n.1, 880. We apply the same criteria as the trial court in determining whether summary judgment was proper. *Id.*

Before the trial court, the movant bears the initial burden of setting out the uncontroverted material facts and demonstrating that judgment as a matter of law flows from those material facts.

8

*Loerch v. City of Union Mo.*, 643 S.W.3d 597, 601 (Mo. App. E.D. 2022). As our Supreme Court has explained:

> Where a "defending party" will not bear the burden of persuasion at trial, that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment. Rather, a "defending party" may establish a right to judgment by showing . . . facts that negate *any one* of the claimant's elements facts . . . .

*ITT*, 854 S.W.2d at 381 (emphasis in original).

If the movant does not meet that initial burden, then the analysis ends and the motion is denied. *Loerch*, 643 S.W.3d at 602. But if the movant meets that burden, then the non-movant can avoid summary judgment by demonstrating either that there is a genuine dispute of material fact or that the undisputed facts do not establish the right to judgment as a matter of law. *Id.*

We exercise caution in affirming a grant of summary judgment because summary judgment forecloses the opposing party's day in court. *Six Flags*, 605 S.W.3d at 409. Caution is warranted in employment discrimination cases particularly because they are "inherently fact-based and often dependent on inferences rather than on direct evidence." *Id.* (quoting *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009)).

## Discussion

In her first two points on appeal, Appellant argues the trial court erred in granting summary judgment because genuine disputes of material fact exist regarding two elements of her sex discrimination claim in Count I. Specifically, in her first point on appeal, Appellant alleges a genuine dispute exists as to whether a term, condition, or privilege of her employment was affected by the harassment. In her second point on appeal, Appellant alleges a genuine dispute exists regarding whether Employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Because we deny Appellant's first point, we need not consider the second point. *See ITT*, 854 S.W.2d at 381.

In her third point, Appellant argues the trial court erred in granting summary judgment on her retaliation claim in Count II because Employer's motion for summary judgment alleged only that Appellant did not suffer an adverse employment action, but that is not an element of her retaliation claim. We deny Appellant's third point.

*Point I*

In analyzing claims under the MHRA, we are guided by both Missouri law and applicable federal employment discrimination cases. *Six Flags*, 605 S.W.3d at 409; *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 242 (Mo. App. E.D. 2006). According to that law, to establish a *prime facia* case of sex discrimination by a non-supervisory employee under the MHRA, Appellant has to prove the following elements: (1) she is a member of a group protected by the MHRA; (2) she was subjected to unwelcome sexual harassment; (3) her gender was a contributing factor in the harassment; [10] (4) a term, condition or privilege of her employment was affected by the harassment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. *Hill*, 277 S.W.3d at 666 n.6; *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 696 (8th Cir. 2021).

In her first point on appeal, Appellant challenges the summary judgment on the fourth element of her sex discrimination claim, that is, that a term, condition, or privilege of her employment was affected by the harassment. A term, condition, or privilege of employment is affected by sexual harassment when the harassment either creates an intimidating, hostile, or offensive work environment, or results in a tangible adverse employment action. *See Hill*, 277

---

[10] Effective August 28, 2017, the MHRA was amended to change the "contributing factor" standard to a "motivating factor" standard. S.B. 43, 99th Gen. Assemb., Reg. Sess. (Mo. 2017); *Jordan v. Bi-State Dev. Agency*, 561 S.W.3d 57, 59 n.1 (Mo. App. E.D. 2018). Because the harassment underlying Appellant's claim occurred prior to the 2017 amendments, the "contributing factor" standard continues to apply here. *See McGaughy v. Laclede Gas Co.*, 604 S.W.3d 730, 745 (Mo. App. E.D. 2020).

S.W.3d at 666; *Eivins v. Missouri Dep't of Corr.*, 636 S.W.3d 155, 179 (Mo. App. W.D. 2021);

*Clark v. AT&T Mobility Servs, L.L.C.*, 623 S.W.3d 197, 205 (Mo. App. W.D. 2021).[11]

<u>Tangible Employment Action</u>

A tangible employment action is a significant change in employment status. *Eivins*, 636

S.W.3d at 179; 8 C.S.R. § 60-3.040(17)(D)(3).

> It is the means by which the supervisor brings official power of the enterprise to bear on subordinates, as demonstrated by the following: it requires an official act of the enterprise; it usually is documented in official company records; it may be subject to review by higher level supervisors; and it often requires the formal approval of the enterprise and use of its internal processes.

8 C.S.R. § 60-3.040(17)(D)(3); *see also Eivins*, 636 S.W.3d at 179. "Examples of tangible

employment actions include but are not limited to: hiring and firing; promotion and failure to

promote; demotion; undesirable reassignment; a decision causing a significant change in

benefits; compensation decisions; and work assignments." *Darks v. Jackson Cnty.*, 601 S.W.3d

247, 255-56 (Mo. App. W.D. 2020); 8 C.S.R. § 60-3.040(17)(D)(4).

Appellant appears to argue that Employer took tangible employment actions against her

by failing to investigate her complaint, interfering with her application for medical leave, and

threatening to terminate her employment.

---

[11] *Amicus curiae* Kansas City Chapter of the National Employment Lawyers Association agrees, "Sexual harassment affects a term, condition, or privilege of employment when it creates an intimidating, hostile, or offensive work environment, or results in a tangible adverse employment action." (citing *Hill*, 277 S.W.3d at 666). Appellant urges, however, that this element can be proved a third way by showing the harassment "had the purpose or effect of unreasonably interfering with her work performance." But the cases cited by Appellant refer to only two methods of proof and appear to subsume "unreasonable interference with work performance" within the hostile work environment method, or conflate it with a tangible employment action. *See McGaughy*, 604 S.W.3d at 756; *Alhalabi v. Mo. Dep't Nat. Res.*, 300 S.W.3d 518, 526 (Mo. App. E.D. 2009) (citing *Hill*, 277 S.W.3d at 666); *see also* 8 C.S.R. § 60-3.040(17)(A)(3). In *Hill*, the Supreme Court of Missouri's most recent foray into this analysis, the Court cited "unreasonable interference with work performance" as merely a way to prove a hostile work environment, and separately analyzed whether the sexual harassment caused a tangible employment action. 277 S.W.3d at 666-67; *see also Six Flags*, 605 S.W.3d at 410, 412 (listing "unreasonable interference with work performance" as a factor in determining hostility of workplace environment).

Appellant directs us to no authority that an employer's failure to investigate a complaint or interference with a leave application is, as a matter of law, a tangible employment action. Neither a failure to investigate a complaint nor delaying approval of a leave application accurately can be characterized as "a significant change in employment status." Nor are they on par with hiring and firing, promotion and failure to promote, demotion, undesirable reassignment, a decision causing a significant change in benefits, compensation decisions, or work assignments. *See generally Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 744 (10th Cir. 2014) (finding denial of leave was not a tangible employment action); *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640 (10th Cir. 2012) (stating, in retaliation case, that "a failure to investigate a complaint, unless it leads to demonstrable harm, leaves an employee no worse off than before the complaint was filed.").

Even if failure to investigate a complaint could conceivably be a tangible employment action as a matter of law, the facts here fall short. While the summary judgment record, properly constituted, reveals a genuine dispute of material fact regarding whether Supervisor asked Henke to stay out of Appellant's work area after the August 2016 incident, that is not evidence of a tangible employment action. Assuming, as we must, that Supervisor failed to ask Henke to stay out of Appellant's work area, the undisputed fact is that Supervisor never told H.R. of Appellant's complaint, despite her obligation to do so. That lapse by Supervisor thus did not "bring official power of the enterprise to bear" on Appellant. 8 C.S.R. § 60-3.040(17)(D)(3); *Eivins*, 636 S.W.3d at 179. Employer's failure to investigate prototypically was not an official act of the enterprise, was not documented in official company records, was not subject to review by higher level supervisors, and did not require the formal approval of the enterprise or use of its internal processes. *See* 8 C.S.R. § 60-3.040(17)(D)(3); *Eivins*, 636 S.W.3d at 179.

12

In stark contrast, when the official power of the enterprise was brought to bear, it was on Appellant's behalf in response to the January 2017 incident. The uncontroverted facts are that Employer, through H.R., immediately investigated Appellant's complaint, interviewed Appellant and the witnesses she identified, spoke to the plant manager and Appellant's supervisors, prohibited Henke from entering Appellant's work area, found Henke culpable, threatened to terminate him if he had any unauthorized contact with, or retaliated against, Appellant, requested he resign as shop steward, and suspended him.

Similarly, setting aside that Employer's interference with Appellant's application for leave is not a tangible employment action as a matter of law, no material fact, genuinely disputed or otherwise, supports that Henke's harassment somehow caused or contributed to that interference. *See Hill*, 277 S.W.3d at 666 (stating plaintiff must prove alleged sexual harassment caused or contributed to tangible employment action). The summary judgment record demonstrates that Appellant made her complaint, Employer's investigation began in earnest, and Appellant applied for leave in the midst of the investigation. Employer told Appellant her leave was delayed because Employer did not receive the required paperwork from her doctor, despite that such paperwork usually was received directly from a doctor. In the meantime, Employer completed its investigation, vindicated Appellant's complaint, and disciplined Henke. Employer also approved Appellant's leave, albeit after a delay, and Appellant took the leave and later returned to work.

Finally, there is no genuine dispute of material fact regarding whether Employer's threat to fire Appellant was because of her complaint. *See id.* Appellant's only support for that allegation was her journal entry. According to Appellant's own evidence, Employer warned Appellant it could not have people coming on the job and, if it happened again, Appellant could

13

be fired because Appellant's husband came to Employer's premises and engaged in an altercation with Henke on the parking lot. That evidence does not support that Employer threatened to fire Appellant because of her complaint. *See* Rule 74.04(c)(1), (2); *Lemay Place Condo. Ass'n v. Frank*, 633 S.W.3d 503, 507-08 (Mo. App. E.D. 2021) (statement of material fact not supported by referenced documents fails to comply with Rule 74.04(c)(1) and must be disregarded).[12]

For these reasons, no reasonable fact-finder could find that Employer took a tangible employment action against Appellant.

<u>Hostile Work Environment</u>

Appellant next argues a reasonable fact-finder could conclude Henke's conduct affected a term, condition, or privilege of her employment by creating an intimidating, hostile, or offensive work environment.

"Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment." *Ickenroth v. Parkway Sch. Dist. C-2*, 612 S.W.3d 247, 254 (Mo. App. E.D. 2020); *Cooper*, 204 S.W.3d at 244 (citing *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998)); *see Six Flags*, 605 S.W.3d at 410 ("The harassing conduct must be 'so intimidating, offensive, or hostile that it poisoned the work environment and that the workplace was permeated with discriminatory intimidation, ridicule, and insult.'" (quoting *Watson v. Heartland Health Labs., Inc.*, 790 F.3d 856, 861 (8th Cir. 2015)).[13]

---

[12] Appellant did not raise the threat of termination, as an adverse employment action or otherwise, in her petition.

[13] Appellant characterizes the trial court's citation to this Court's *Six Flags* decision as erroneous and urges us to ignore *Six Flags* because it relied on inapplicable federal cases and "did not follow the long, clear, consistent line of Missouri case law holding that objective offense is a question of fact for the jury." The *Six Flags* court explicitly was "guided by both Missouri law and applicable federal employment discrimination cases," 605 S.W.3d at 409, and, as we explain *infra*, Appellant misapprehends Missouri law. *Amicus curiae*, far from calling *Six Flags* an outlier, cites it for the legal standard for a hostile work environment and seeks only to distinguish its facts.

"Importantly, in most cases where a hostile working environment is established, the discriminatory acts are not of a nature that can be identified individually as significant events; instead the day-to-day harassment is primarily significant in its cumulative effect." *Clark v. AT&T Mobility Servs., LLC*, 623 S.W.3d 197, 205 (Mo. App. W.D. 2021) (quoting *McGaughy*, 604 S.W.3d at 748 (internal quotations and alterations omitted)). The conduct must be sufficient to create a hostile work environment, both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person. *Ickenroth*, 612 S.W.3d at 254; *Cooper*, 204 S.W.3d at 244-45.

Regarding Appellant's subjective view of Henke's conduct, Employer directs us to Appellant's admissions that she did not consider the August 2016 incident a "traumatic emotional event" and did not suffer any kind of emotional distress from it. Notwithstanding Appellant's admissions, Appellant also told Henke, "I'm gonna get fired because you're getting ready to get hit. Don't touch me." Appellant then informed Supervisor of the August 2016 incident and raised it again during Employer's investigation of the January 2017 incident. After the latter incident, Appellant experienced serious physical and emotional effects. At the very least, a genuine dispute exists regarding whether Appellant subjectively viewed Henke's conduct as sufficiently severe to create a hostile work environment.

Thus, the issue becomes, objectively, whether Henke's conduct reasonably could be viewed as so severe or pervasive that it altered the conditions of Appellant's employment and created a discriminatorily hostile, abusive work environment. *Ickenroth*, 612 S.W.3d at 254; *Six Flags*, 605 S.W.3d at 410. Appellant consistently frames that issue as whether Henke's conduct was objectively offensive "enough" to survive summary judgment. From that premise, she draws the ineluctable conclusion that "whether harassment is objectively offensive 'enough' . . . is a

15

question of fact for the jury to decide and not for the trial court to determine on its own." (citing *Fuchs v. Dep't of Rev.*, 447 S.W.3d 727 (Mo. App. W.D. 2014)). She characterizes as the "core holding" of *Fuchs* that "objective offense is a question of fact for the jury" and calls it the "reaffirmation of a bedrock principle of Missouri law that has been applied consistently under the MHRA."

Substantially short of the "bedrock principle" Appellant espouses, the *Fuchs* court allowed that "whether a reasonable person would similarly find the conduct offensive will *generally* be a question of fact for a jury." *Fuchs*, 447 S.W.3d at 734 (emphasis added). Other cases have repeated that the issue is "largely," but not always, up to a jury. *See*, *e.g.*, *Cooper*, 204 S.W.3d at 245 (quoting *Howard*, 149 F.3d at 840); *see also Six Flags*, 605 S.W.3d at 410-11 ("[S]ome inappropriate behavior objectively does not rise to the level of actionable harassment as a matter of law.").

For that matter, the question is not precisely whether harassment is offensive "enough." It is whether the sexual harassment was so severe or pervasive that it altered the plaintiff's conditions of employment and created a discriminatorily hostile, abusive environment in which to work. *See Ickenroth*, 612 S.W.3d at 254; *Clark*, 623 S.W.3d at 205. In other words, either the harassment was severe (*i.e.*, grave or acute) or pervasive (*i.e.*, ubiquitous or rampant), or it was not. *See* J.I. Rodale, The Synonym Finder 880, 1096 (1986); *see also Ickenroth*, 612 S.W.3d at 254. Likewise, either Appellant's conditions of employment were altered and a discriminatorily hostile, abusive work environment was created, or they were not. *See Ickenroth*, 612 S.W.3d at 254. These are by no means easy issues for disposition on summary judgment, but they are relatively more straightforward than Appellant's ephemeral offensive "enough" inquiry.

What matters on summary judgment is whether a fact is material and uncontroverted, and whether the proponent of that fact is entitled to judgment as a matter of law. Rule 74.04(c)(6). Appellant insists the issue before us is strictly a fact issue and is never subject to judgment as a matter of law. But, as our aforementioned cases attest, this is not strictly a fact issue. It involves a legal judgment of what, at a minimum, constitutes a hostile work environment as a matter of law. Nor is this issue uniquely excepted from judgment as a matter of law. Proof of a hostile work environment is one way to prove that harassment affected a term, condition, or privilege of employment, a necessary element of a sex discrimination claim. As with any element, a genuine dispute of material fact must be shown to avoid summary judgment. *See ITT*, 854 S.W.2d at 381.

For these reasons, the objective test for a hostile work environment is only "generally" or "largely," but not always, an issue for a jury to decide. Thus, this Court turns to the objective question of whether severe or pervasive sexual harassment altered Appellant's conditions of employment and created a discriminatorily hostile, abusive work environment. To answer that question, we look to the totality of the circumstances. *Cooper*, 204 S.W.3d at 245 (citing *Stacks v. Sw. Bell Yellow Pages, Inc.*, 27 F.3d 1316, 1327 (8th Cir. 1994)); 8 C.S.R. § 60-3.040(17)(B).

Here, viewing the record, properly constituted, in the light most favorable to Appellant, we conclude Henke's harassment could not objectively be viewed as so severe or pervasive that it altered the conditions of Appellant's employment and created a hostile, abusive work environment. Henke's swiping a cardboard box against Appellant's buttocks as she passed by was separated by five months from his standing close to Appellant with his hand cupped near her breast. That conduct, while unacceptable, lasted only seconds. Similarly, Henke's text to Appellant on the evening of the January 2017 incident was an offensive utterance, but it was not physically threatening and did not subject her to public humiliation. *See Cooper*, 204 S.W.3d at

17

245. In the interim, Appellant experienced no other harassment, or any ill effects from the harassment.

The uncontroverted fact is that Appellant did not experience any physical or emotional effects until after the January 2017 incident. By that time, Employer had undertaken its investigation, spoken to the plant manager and Appellant's supervisors, and prohibited Henke from entering Appellant's work area. For her part, Supervisor told other employees to give Appellant notice before approaching her. Ultimately, Employer found that Henke sexually harassed Appellant, disciplined him, and warned him his employment would be terminated if he had any unauthorized contact with, or retaliated against, Appellant.

As Appellant acknowledges, hostile work environments typically are characterized by "day-to-day harassment" and its "cumulative effect." Those factors are absent here. Regardless, the two harassing incidents could not otherwise reasonably be described as "severe or pervasive," that is, grave or acute, or ubiquitous or rampant. Objectively speaking, even assuming the harassment was severe or pervasive, it could not reasonably be construed as having altered the conditions of Appellant's employment and created a discriminatorily hostile, abusive work environment. *See Ickenroth*, 612 S.W.3d at 254; *Clark*, 623 S.W.3d at 205. Or, as the *Six Flags* court put it, the harassing conduct was not so intimidating, offensive, or hostile that the work environment was poisoned and permeated with discriminatory abuse. 605 S.W.3d at 410.

Henke's conduct is intolerable in a workplace, and we fully realize the largely undisputed subjective harm his conduct inflicted on Appellant. The objective reality nonetheless is that the harassment was isolated and Employer did not tolerate it. Instead, Employer intervened before the harassment could create a hostile work environment. Our decision does not discount the subjective harm to Appellant; it simply affirms the reason there is an objective component to our

18

analysis. While caution is warranted because summary judgment forecloses a party's day in court, *Six Flags*, 605 S.W.3d at 409, Missouri and federal courts also caution that the MHRA and Title VII, by their terms, are not to be reduced to "general civility codes" or indiscriminate prohibitions on all "boorish, vulgar, and inappropriate" workplace conduct. *See, e.g., Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Barekman v. City of Republic*, 232 S.W.3d 675, 681 (Mo. App. S.D. 2007).

The trial court did not err in granting summary judgment on the fourth element of Appellant's sex discrimination claim, that is, that a term, condition, or privilege of her employment was affected by the harassing conduct. Appellant's Point I on appeal is denied.

We therefore do not consider Appellant's Point II alleging the trial court erred in granting summary judgment on the fifth element of Appellant's sex discrimination claim. *See ITT*, 854 S.W.2d at 381.

### Point III

Finally, in her third point on appeal, Appellant argues the trial court erred in granting summary judgment on her retaliation claim in Count II because Employer's motion for summary judgment alleged only that Appellant did not suffer an adverse employment action, but that is not an element of her retaliation claim.

Appellant offers this argument for the first time on appeal. As Employer points out, and Appellant concedes, Appellant opposed defendant's motion for summary judgment before the trial court not on the basis that she need not prove an adverse employment action, but that she in fact suffered an adverse employment action. Appellant has not requested in her briefs that we exercise our discretion to engage in plain error review, and we decline to do so. *See* Rule 84.13(c).

Appellate review of summary judgment is limited to the issues put before the trial court. *Rapp v. Eagle Plumbing, Inc.*, 440 S.W.3d 519, 523 (Mo. App. E.D. 2014). Parties are bound by the position they took in the trial court and will not be heard on a different theory on appeal. *Id.* "On review, an appellate court will not convict a trial court of error on an issue that was never presented to the trial court for its consideration." *Id.* Appellant is precluded from raising this issue on appeal because she did not raise it before the trial court in her response to Employer's motion for summary judgment. *See Fouts v. Regency N. Acquisition, LLC*, 569 S.W.3d 463, 466-67 (Mo. App. W.D. 2018); *D.E. Props. Corp. v. Food for Less, Inc.*, 859 S.W.2d 197, 201 (Mo. App. E.D. 1993).

Even if Appellant's argument was not waived, the conduct she identifies as retaliatory is Employer's interference with her application for medical leave and threat to fire her.[14] For largely the same reasons that Appellant's allegations of a tangible employment action failed, Appellant's retaliation claim fails.

Appellant's third point is denied.

## Conclusion

We affirm the trial court's summary judgment.

_Cristian M. Stevens, J._

Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.

---

[14] Appellant's petition raised only that she "had difficulty getting leave" from Employer.